311 Ga. 682
FINAL COPY

S21A0329.  LOVE et al. v. FULTON COUNTY BOARD OF TAX
ASSESSORS et al.


ELLINGTON, Justice.

This case arose from a taxpayer grievance concerning whether the Fulton County Board of Tax Assessors (the "Board") had been diligent in determining that the Atlanta Falcons Stadium Company LLC ("StadCo"), had a usufruct interest in the Mercedes-Benz Stadium that was not subject to ad valorem taxation. In 2017, Albert E. Love and other Fulton County taxpayers (the "appellants") sued the Board, the individual members of the Board, and the Board's Chief Appraiser, seeking mandamus and other relief.[1] Since then,

---

[1] The appellants (plaintiffs below) are Love, Gregory L. Fann, Sr., Anthony Kristian Vatalaro, Catherine Rachel Flood, Peter Zyskowski, and Lynn Zyskowski. The plaintiffs originally sued Fulton County; the Board; Board members Salma Ahmed, Michael Fitzgerald, Brandi Hunter, Ed London, and Royce Morris; and the Board's Chief Appraiser, Dwight Robinson. The plaintiffs sued the Board members and the Chief Appraiser in their official and individual capacities. In their fourth amended petition, the plaintiffs sued Fulton County; the Board; Board members Salma Ahmed, Michael Fitzgerald, Edward London, Lisa Aman, and Pamela Smith; the Board's Chief Appraiser,

1

the suit has been dismissed, appealed to the Court of Appeals, see *Love v. Fulton County Bd. of Tax Assessors*, 348 Ga. App. 309 (821 SE2d 575) (2018), remanded, amended to add claims and intervenors, and then dismissed again.

At issue in this appeal is whether the trial court properly dismissed the appellants' fourth amended petition, which asserted claims for mandamus, declaratory and injunctive relief, and a refund of taxes paid. In support of its claims, the appellants asserted that the Board and its members had committed a gross abuse of discretion by failing to find that StadCo had a leasehold interest in the stadium that is subject to ad valorem taxation. The appellants also asserted that the Board's decision was based on an "unconstitutionally adopted" exemption codified in OCGA § 10-9-10. The appellees and intervenors StadCo and the Georgia World

Dwight Robinson; and the Fulton County Tax Commissioner, Arthur E. Ferdinand. (The trial court, however, denied the plaintiffs' motion to add Fulton County and the Fulton County Tax Commissioner as defendants.) In the fourth amended petition, the plaintiffs modified two of their claims (Count I for declaratory relief, and Count II for injunctive relief) to sue the Board members and the Chief Appraiser in their individual capacities only.

Congress Center Authority ("GWCCA") answered and filed motions arguing, among other things, that the Board had properly determined that StadCo's interest was a non-taxable usufruct after conducting an investigation and holding a hearing at which they considered evidence concerning the nature of StadCo's interest. They also argued that the Board's decision was not based on OCGA § 10-9-10 but on an evaluation of agreements entered into between the intervenors prior to the construction of the stadium. In its order dismissing the case, the trial court addressed each of the appellants' claims and found that the petition lacked any legal basis for recovery. On appeal, the appellants contend that the trial court erred in dismissing the petition, allegedly sua sponte, arguing primarily that the trial court had applied an incorrect standard of review. They also contend that the trial court erred in declining to find OCGA § 10-9-10 unconstitutional. For the following reasons, we see no error and affirm the judgment.

> A motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with

3

certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

(Footnotes omitted.) *Anderson v. Flake*, 267 Ga. 498, 501 (2) (480 SE2d 10) (1997). See also OCGA § 9-11-12 (b) (6). In assessing whether a claim should be dismissed, a court may consider exhibits attached to and incorporated into the complaint and answer. See OCGA § 9-11-10 (c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *Minnifield v. Wells Fargo Bank,* 331 Ga. App. 512, 514-515 (2) (771 SE2d 188) (2015) ("When considering a motion to dismiss for failure to state a claim, a trial court may consider exhibits attached to and incorporated into the complaint and answer." (citation omitted)). To the extent there are inconsistencies between the allegations in the complaint and exhibits attached to the complaint, the exhibits control. See *Lord v. Lowe*, 318 Ga. App. 222, 223-224 (741 SE2d 155) (2012). The appellate court "review[s] de novo the trial court's ruling

4

on the [defendants'] motion to dismiss, accepting as true all well-pled material allegations in the complaint and resolving any doubts in favor of [the plaintiff]." *Greene County School Dist. v. Circle Y Constr.*, 291 Ga. 111, 112 (728 SE2d 184) (2012).

1. According to the fourth amended petition and its exhibits, before the new stadium was built, the GWCCA owned and operated the Georgia Dome, which was the home venue for the Atlanta Falcons professional football team. Prior to investing $1.5 billion to construct the new stadium, the parties involved in the project entered into a number of agreements concerning the tax ramifications of their interests in the stadium. On April 5, 2013, GWCCA, StadCo, and Atlanta Falcons Football Club, LLC (the "Club"), entered into a "Memorandum of Understanding for a Successor Facility to the Georgia Dome" (the "MOU"). That same day, GWCCA, the Atlanta Development Authority d/b/a Invest Atlanta ("Invest Atlanta"), and StadCo entered into a "Tri-Party Memorandum of Understanding for a Successor Facility to the Georgia Dome" (the "Tri-Party MOU").

5

With respect to taxation, the MOU states that "[n]either StadCo nor the GWCCA expect any ad valorem taxes to be payable with respect to their respective interests in such real property and improvements for the [stadium project], and neither Party will in any event assume or undertake any ad valorem tax responsibilities or liabilities of the other." The MOU further provided that "StadCo shall have received confirmation from the [Board] or other appropriate governmental authority in form reasonably satisfactory to StadCo that StadCo's and the Club's rights with respect to the [stadium] under the License Agreement and related agreements will constitute a usufruct."[2] On August 6, 2013, StadCo's counsel provided the Board and the Board's Chief Appraiser with a lengthy

---

[2] Under Georgia statutory law,

the grant by a landowner to another of the right "simply to possess and enjoy the use of such real estate either for a fixed time or at the will of the grantor" passes no estate; instead it creates a landlord-tenant relationship in which the tenant holds only a usufruct. OCGA § 44-7-1 (a). Because a usufruct is not considered an estate in real property under Georgia law, it is not subject to ad valorem property tax.

*Clayton County Bd. of Tax Assessors v. Aldeasa Atlanta Joint Venture*, 304 Ga. 15, 16 (1) (815 SE2d 870) (2018). "[D]uring the term of a usufruct, the landlord continues to hold the present estate in the property." *GeorgiaCarry.Org v. Atlanta Botanical Garden*, 306 Ga. 829, 838 (3) (834 SE2d 27) (2019).

legal memorandum analyzing the terms of the MOU and the Tri-Party MOU, which asserted that, "based on the significant amount of control over the [stadium] that is retained by the GWCCA, StadCo's License with respect to the [stadium] creates a usufruct and not an estate for years."

On August 22, 2013, at a regularly scheduled meeting of the Board, a motion was introduced to consider whether StadCo's interest would be exempt from ad valorem taxes. After discussing the motion, the Board unanimously voted that StadCo's interest in the stadium was not subject to ad valorem taxes. That same day, the Board issued a "Statement of Intent to Exempt Real and Personal Property" (the "Exemption Decision"), which expressly provides that StadCo's interest in the stadium would not be subject to ad valorem taxation.

The Board's Exemption Decision states that it was based on its evaluation of the MOU and the Tri-Party MOU. The MOU is an 86-page document that outlines in detail the expectations and understanding of GWCCA, StadCo, and the Club with respect to the

7

financing, construction, development, and operation of the stadium, including the terms of proposed lease or license agreements. The Tri-Party MOU is a 99-page document that similarly outlines the expectations and understanding between the parties with respect to additional rights and obligations concerning the use of the stadium. The Board's Exemption Decision provides, in relevant part:

> Based on the [MOU and the Tri-Party MOU], and pursuant to OCGA § 10-9-10,[3] it is the intent of the

---

[3] The GWCCA owns and operates the stadium and the land it sits upon, and, as an agency of the State of Georgia, it is exempt from ad valorem taxes pursuant to OCGA § 10-9-10. That Code section provides:

> It is found, determined, and declared that the creation of the [Georgia World Congress Center Authority] and the carrying out of its corporate purposes are in all respects for the benefit of the people of this state and are public purposes and that the authority will be performing an essential governmental function in the exercise of the powers conferred upon it by this chapter. The authority shall be required to pay no taxes or assessments upon any property acquired or under its jurisdiction, control, possession, or supervision or upon its activities in the development, construction, operation, or maintenance of any of the projects or facilities erected, maintained, or acquired by it or any fees, rentals, or other charges for the use of such facilities or other income received by the authority and shall not be subject to regulation of its activities in the acquisition, development, construction, operation, or maintenance of any of the projects or facilities acquired, developed, constructed, operated, or maintained by it by any county or municipal corporation of this state. The exemption from taxation provided for in this Code section shall include an exemption from sales and use tax on tangible personal property purchased by the authority for use exclusively by the authority.

8

Fulton County Board of Assessors to recognize the exempt status to the real and business personal property included in the [MOUs] and the lease/license of the stadium property including all buildings, parking areas and other real and personal property to be constructed and utilized under the terms of the lease/license.

This exemption will take effect upon commencement of construction of the stadium and remain in effect throughout the term of the lease/license agreement provided that the terms of the [MOUs] are not altered and the lease/license does not substantially change the terms and conditions of the [MOUs]. Any changes or alterations of such [MOUs] or lease/license agreements will be subject to review by the Fulton County Board of Assessors to ensure that such changes do not alter the relationship of the parties substantially that would create a change that would render the property taxable under Georgia Law.

Based on the Exemption Decision, StadCo was not required to nor has it paid ad valorem taxes on its right to use the stadium.

On May 18, 2015, StadCo, consistent with the MOU and the Tri-Party MOU, entered into a Stadium License and Management Agreement (the "SLM Agreement") with GWCCA. In the SLM Agreement, the GWCCA formally granted StadCo a usufruct in the

---

The revenue bonds or other evidence of indebtedness issued by the authority, their transfer, and the income therefrom shall at all times be exempt from taxation within this state by the state or its municipalities or political subdivisions.

stadium improvements and set forth the terms and conditions for the development, construction, and operation of the stadium between the GWCCA, as licensor, and StadCo, as licensee. The SLM Agreement provided that the GWCCA did not transfer an estate for years, a tenancy, a leasehold interest, or other real property interest. The term of the SLM Agreement runs through February 28, 2047, and is subject to extension or renewal by the parties. Because the Board's Exemption Decision provided that the tax exemption remains in effect throughout the term of the lease/license agreement described in the MOUs (provided that any subsequent agreement does not substantially change the terms and conditions of the MOUs), the exemption remains in effect until February 28, 2047, when the SLM Agreement is set to expire.

The appellants filed suit on October 17, 2017. The petition included two counts for a writ of mandamus seeking to have the Board and its members reevaluate the taxability of StadCo's interest in the stadium. It also included a count for a declaratory judgment, asserting that StadCo's interest in the stadium was not a usufruct

10

but, rather, a taxable leasehold interest. The appellants subsequently amended the petition to add a fourth count seeking to enjoin the Board and its members from treating StadCo's leasehold interest in the stadium as tax exempt, and a fifth count seeking a declaration that OCGA § 10-9-10, as it was amended in 1989, was unconstitutional. Thereafter, the Board filed a motion to dismiss the amended petition for failure to state a claim upon which relief may be granted.

On March 13, 2018, the trial court granted the Board's motion to dismiss. The trial court found that the Board "exercised its discretion in determining that StadCo's contractual rights in the [stadium] were not subject to ad valorem taxes." It further found that "[the Board] and its members reviewed the MOU and the Tri-Party MOU, evaluated StadCo's contractual rights in the [stadium], determined that the contractual rights constituted a non-taxable usufruct, and prepared the [Exemption Decision], which was voted on and unanimously approved." The trial court further found: "Indeed, it is clear based upon the pleadings alone that the [Board]

11

considered this issue and made a decision based upon all of the information before it[.]" The trial court noted that "Petitioners may have preferred a different *result*, but that does not entitle them to mandamus relief against the [Board] and its members." (Emphasis in original.) Finally, the court found that "[t]he terms of the SLM Agreement are consistent with the terms contemplated by the MOU and the Tri-Party MOU," and that "Petitioners failed to rebut (or even address) Respondents['] assertion that the SLM Agreement is consistent with the MOU and the Tri-Party MOU, which assertion is supported by the Exhibits attached to the Amended Petition and Second Amended Petition and adopted by the Court as a finding of fact."

The appellants appealed this first dismissal order to the Court of Appeals. The Court held that the trial court properly considered the exhibits to the petitions in dismissing the amended petition, and that any findings based on the trial court's review of those exhibits did not convert the motion to dismiss into a motion for summary judgment. See *Love*, 348 Ga. App. at 315-316 (1). The appellants

urged the Court of Appeals to hold that the Board and its members had a nondiscretionary duty to investigate and determine whether property in the county was subject to ad valorem taxation. They argued that the amended petition and exhibits showed that the Board failed to exercise this duty because the Board did not review the SLM Agreement to determine whether StadCo's interest in the stadium was taxable. Thus, the appellants contended, if their amended complaint were accepted as true, they were entitled to a writ of mandamus compelling the Board to investigate and determine whether StadCo's interest was subject to ad valorem taxation based on the SLM Agreement. The Court of Appeals held, however, that the appellants had failed to state a mandamus claim under OCGA § 48-5-299, which pertains to the duties of a county board of tax assessors.[4] The Court held that OCGA § 48-5-299

---

[4] OCGA § 48-5-299 (a) provides:
    It shall be the duty of the county board of tax assessors to investigate diligently and to inquire into the property owned in the county for the purpose of ascertaining what real and personal property is subject to taxation in the county and to require the proper return of the property for taxation. The board shall make

13

"affords the [Board] discretion in the process it follows to investigate and inquire into whether property is subject to ad valorem property taxation." *Love*, 348 Ga. App. at 318 (2). It also stated that it is within the Board's discretion to determine the manner in which to conduct its investigation, what evidence should be reviewed, and how it reaches decisions. Id. The Court went on to explain:

> Given that the [Board] is afforded discretion in how to conduct an investigation, mandamus relief would be appropriate only if the Board *failed entirely* to conduct an investigation and reach a decision regarding the tax status of [StadCo's] interest in the New Stadium. *However, the plaintiffs' amended petition and attached exhibits disclose with certainty that the [Board] investigated the taxability of [StadCo's] interest and reached a decision on that question.* In this regard, the [Exemption Decision] and the minutes from the August 22, 2013 [Board] meeting attached to the plaintiffs'

such investigation as may be necessary to determine the value of any property upon which for any reason all taxes due the state or the county have not been paid in full as required by law. In all cases where the full amount of taxes due the state or county has not been paid, the board shall assess against the owner, if known, and against the property, if the owner is not known, the full amount of taxes which has accrued and which may not have been paid at any time within the statute of limitations. In all cases where taxes are assessed against the owner of property, the board may proceed to assess the taxes against the owner of the property according to the best information obtainable; and such assessment, if otherwise lawful, shall constitute a valid lien against the property so assessed.

amended petition reflect that the Board reviewed the MOU and the Tri-Party MOU, determined that the interest of [StadCo] was not subject to ad valorem taxation, and specified that the Board's decision would "take effect upon commencement of construction of the (New Stadium)" and remain in effect throughout the term of the parties' agreement, with the caveat that any substantial changes in the final agreement reached by the parties could lead the Board to reconsider its decision.

Accordingly, as reflected by the amended petition and attached exhibits, there was not a total failure by the [Board] to investigate and reach a decision, and mandamus relief would not be an appropriate mechanism to compel the Board to conduct its investigation in a particular manner under OCGA § 48-5-299 (a).

(Citations omitted; emphasis supplied.) *Love*, 348 Ga. App. at 318-319 (2).

The Court of Appeals concluded that the mandamus claims brought in the amended petition against the Board members failed as a matter of law. See Love, 348 Ga. App. at 319 (3). The Court noted, however, that mandamus relief may be appropriate where an official, acting in an official capacity, performs a discretionary duty in a manner so unreasonable, arbitrary, and capricious that it amounts to a gross abuse of discretion. See id. at 319 (2) n.8. The Court did not address that circumstance because the appellants had

15

not framed their mandamus claim to allege a gross abuse of discretion.

The Court of Appeals also affirmed the dismissal of the appellants' claims for declaratory and injunctive relief against the Board as well as against the individual defendants in their official capacities on sovereign immunity grounds. See Love, 348 Ga. App. at 320 (4) n.9. However, the Court reversed the trial court's order dismissing the counts as asserted against the individual defendants, in their individual capacities only, for a declaratory judgment as to whether the SLM Agreement transferred to StadCo a taxable leasehold interest in the stadium, and for an injunction to prevent the Board members from implementing the Exemption Decision. And, finally, the Court reversed the trial court's dismissal of the appellants' challenge to the constitutionality of OCGA § 10-9-10 on mootness grounds. See *Love,* 348 Ga. App. at 320-321 (4), (5). The Court of Appeals remanded the case for the resolution of these matters.

After the case was remanded to the trial court, the appellants

amended their petition a third time and the trial court permitted GWCCA and StadCo to intervene. Thereafter, GWCCA filed a motion to dismiss, and StadCo filed a motion for summary judgment. Then, on October 22, 2019, the appellants filed their fourth amended petition. The fourth amended petition restates most of the appellants' earlier claims, including counts for: (a) a writ of mandamus based on the Board members' "gross abuse of discretion" in issuing and in failing to review the Exemption Decision; (b) injunctive relief to enjoin and restrain the Board members in their individual capacities from implementing the Exemption Decision; (c) a judgment against the Board members in their individual capacities declaring that the SLM Agreement granted StadCo a taxable leasehold interest; (d) a judgment against the Board, as well as against the Board members and the Chief Appraiser in their official and individual capacities, declaring that OCGA § 10-9-10, as amended in 1989, is unconstitutional. The fourth amended petition also added a new claim seeking an order directing Fulton County and the Fulton County Tax Commissioner to issue a refund under

17

OCGA § 48-5-380 to every county resident who was allegedly overcharged for property taxes in 2018 and 2019 based on the Board's alleged failure to assess taxes against StadCo in connection with its interest in the stadium (Count V).[5] On April 22, 2020, the trial court entered an order dismissing the fourth amended petition in its entirety for failing to state a claim upon which relief may be granted. This appeal followed.

---

[5] The trial court did not address whether the doctrine of sovereign immunity barred any of the recast claims or the new claim brought in the fourth amended petition. As we have explained,

> [t]he applicability of sovereign immunity to claims brought against the State is a jurisdictional issue. Indeed, sovereign immunity [—] like various other rules of jurisdiction and justiciability [—] is concerned with the extent to which a case properly may come before a court at all. Therefore, the applicability of sovereign immunity is a threshold determination, and, if it does apply, a court lacks jurisdiction over the case and, concomitantly, lacks authority to decide the merits of a claim that is barred.

(Citation, punctuation and footnote omitted.) *McConnell v. Dept. of Labor*, 302 Ga. 18, 18-19 (805 SE2d 79) (2017). We note that the trial court should have addressed whether the doctrine of sovereign immunity barred the claim for declaratory relief challenging OCGA § 10-9-10 because it was brought against the Board as well as against the Chief Appraiser and the Board members in their official capacities. However, because the appellants also sought prospective declaratory relief against the Board members and the Chief Appraiser in their individual capacities, the claim would have survived the sovereign immunity analysis as to those defendants in their individual capacities, see, e.g., *Lathrop v. Deal*, 301 Ga. 408, 443-444 (III) (C) (801 SE2d 867) (2017), and the trial court was authorized to address the merits of those claims.

2. The appellants contend that the trial court erred in allegedly dismissing their fourth amended petition sua sponte. They also argue at length that the trial court erred by evaluating their claims under the "any evidence" standard applicable to appellate review of administrative decisions instead of the legal standard a trial court must apply when considering whether to grant a motion to dismiss. Our review of the trial court's dismissal order is de novo. See *Greene County School Dist.*, 291 Ga. at 112.

First, pretermitting whether the trial court dismissed the petition on its own, it had the authority to do so. See *Roberts v. DuPont Pine Products*, 352 Ga. App. 659, 661 (2) (835 SE2d 661) (2019) ("A trial court has the authority to dismiss claims sua sponte if it can determine from the pleadings that the claims cannot succeed as a matter of law." (citation omitted)).[6] Second, the trial court evaluated the petition under the legal standard applicable to

---

[6] The trial court noted that it had already considered "the merits and deficiencies" of many of the claims raised in the fourth amended petition because those same claims had been raised in prior petitions and had been debated in previous as well as in pending motions to dismiss or for summary judgment.

19

motions to dismiss, expressly stating that dismissal for failure to state a claim was appropriate "where a complaint lacks any legal basis for recovery." The trial court referenced several cases that correctly explain or elaborate on this legal standard, including the trial court's authority to consider exhibits attached to and incorporated into a petition.[7] Contrary to the appellants' contentions, the trial court did not apply an "any evidence" standard

---

[7] The trial court dismissed the fourth amended complaint pursuant to OCGA § 9-11-12 (b) (6) for failure to state a claim, based on its determination that "[the] complaint lack[ed] any legal basis for recovery," quoting *Auto-Owners Ins. Co. v. Tracy*, 344 Ga. App. 53, 54 (806 SE2d 653) (2017) ("We view all of the plaintiff's well-pleaded material allegations as true, and view all denials by the defendant as false, noting that we are under no obligation to adopt a party's legal conclusions based on these facts." (citation and punctuation omitted)). The court also cited *Villa Sonoma at Perimeter Summit Condo. Assn. v. Commercial Indus. Bldg. Owners Alliance*, 349 Ga. App. 666, 667 (1) (824 SE2d 738) (2019) (A complaint lacks any basis for recovery when "(1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought." (citations omitted)); *Roberts*, 352 Ga. App. at 661 (2) ("A trial court has the authority to dismiss claims sua sponte if it can determine from the pleadings that the claims cannot succeed as a matter of law." (citation omitted)); *Minnifield*, 331 Ga. App. at 514-515 (2) ("When considering a motion to dismiss for failure to state a claim, a trial court may consider exhibits attached to and incorporated into the complaint and answer." (citation omitted)).

20

of review. Rather, in discussing how the Board had evaluated StadCo's interest in the stadium and reached its exemption decision, the trial court explained that "it is helpful to put this case in its proper context," stating that the appellants were collaterally attacking an agency decision, one that, if appealed to a superior court, would be entitled to great deference under the "any evidence" standard.[8]

Having concluded that the trial court applied the correct legal standard in dismissing the appellants' fourth amended petition, and considered only the appellants' "pleadings and their attachments" in

---

[8] In such an appeal, the appellants would not be allowed to expand the record. The trial court continued:

[I]ndeed, the reviewing court's "quantum of proof" inquiry is limited to determining if *any* evidence supported the agency decision. *Emory Univ. v. Levitas*, 260 Ga. 894, 896-897 [(401 SE2d 691)] (1991), abrogated on other grounds by *Pruitt Corp. v. Georgia Dept. of Community Health*, 284 Ga. 158 [(664 SE2d 223)] (2008). If the reviewing court finds that at least some evidence supports the ruling — and that the ruling was not so arbitrary and capricious as to constitute a gross abuse of discretion — then the ruling stands. Importantly, the court does not re-weigh the evidence, as Petitioners here seek it to do, nor does the court consider evidence outside the record that was before the agency. *Fulton County v. Berry*, [354 Ga. App. 841 (841 SE2d 744)] (2020).

21

concluding that each claim contained in the petition failed as a matter of law,[9] we now evaluate whether the trial court properly dismissed those claims.

3. (a) The appellants sought a writ of mandamus based upon the Chief Appraiser's and the Board members' (collectively "Board members") alleged "gross abuse of discretion" in the issuance of the Exemption Decision as well as in the alleged failure to reconsider the Exemption Decision in light of the SLM Agreement.[10] Specifically, the appellants contended that none of the agreements that StadCo had entered into, including the SLM Agreement, "were

---

[9] As discussed above, in assessing whether a claim should be dismissed, a court may consider exhibits attached to and incorporated in the complaint and answer, and to the extent there are inconsistences between the allegations in the complaint and exhibits attached to the complaint, the exhibits control. Thus, the trial court properly relied upon the Board's Exemption Decision, the two MOUs, and the SLM Agreement, as all of these documents were either quoted verbatim in the fourth amended petition, were attached to and incorporated into that petition, or both. The Court of Appeals' decision in the earlier appeal also recognized that these same documents were attached to previous versions of the petition and that the trial court could consider them on a motion to dismiss. See *Love*, 348 Ga. App. at 310-312.

[10] The mandamus claim was also brought against the Board. Mandamus, however, is by definition a claim against officials in their official capacities, see OCGA § 9-6-20, which is why sovereign immunity did not preclude the appellants' claim for mandamus relief against the Chief Appraiser and the Board members. See *Southern LNG v. MacGinnitie*, 290 Ga. 204 (719 SE2d 473) (2011).

ever investigated, evaluated, analyzed, or reviewed as to whether they altered or changed the ad valorem tax status or exempt status of StadCo's real property interest" in the stadium. The appellants also asserted that the Board members had "failed and refused to perform a diligent investigation" into whether "the SLM Agreement has materially altered the relationship between the GWCCA and StadCo, from an ad valorem property tax standpoint."

OCGA § 9-6-20 provides, in relevant part:

> All official duties should be faithfully performed, and whenever, from any cause, a defect of legal justice would ensue from a failure to perform or from improper performance, the writ of mandamus may issue to compel a due performance if there is no other specific legal remedy for the legal rights[.]

Mandamus is "an extraordinary remedy to compel a public officer to perform a required duty when there is no other adequate legal remedy." (Citation and punctuation omitted.) *R. A. F. v. Robinson*, 286 Ga. 644, 646 (1) (690 SE2d 372) (2010). "The writ of mandamus is properly issued only if (1) no other adequate legal remedy is available to effectuate the relief sought; and (2) the applicant has a

23

clear legal right to such relief." (Citation and punctuation omitted.)

*Ga. Assn. of Professional Process Servers v. Jackson*, 302 Ga. 309, 312 (2) (806 SE2d 550) (2017). Further,

> [f]or mandamus to issue, the law must not only authorize the act to be done, but must require its performance. Where performance is required by law, a clear legal right to relief will exist either where the official or agency fails entirely to act or where, in taking such required action, the official or agency commits a gross abuse of discretion.

(Citation and punctuation omitted.) Id. at 312-313 (2). See also OCGA § 9-6-21 (a) ("Mandamus shall not lie as . . . to a public officer who has an absolute discretion to act or not to act unless there is a gross abuse of such discretion. However, mandamus shall not be confined to the enforcement of mere ministerial duties."). A gross abuse of discretion occurs where an official performs a discretionary duty in a manner that is arbitrary, capricious, and unreasonable. See *Massey v. Ga. Bd. of Pardons & Paroles*, 275 Ga. 127, 128 (2) (562 SE2d 172) (2002).

The trial court determined that the appellants' mandamus claim had, in part, been resolved in the appellees' favor when the

24

Court of Appeals affirmed the previous order dismissing the appellants' original mandamus claim. The Court of Appeals held that the trial court did not err in dismissing the mandamus claim as it had been framed in the previous petition because, although the Board members had a clear legal duty under OCGA § 48-5-299 (a) to investigate diligently and to inquire into the taxability of StadCo's interest, "there was not a total failure by the [Board members] to investigate and reach a decision, and mandamus relief would not be an appropriate mechanism to compel the [Board members] to conduct [their] investigation in a particular manner under OCGA § 48-5-299 (a)." *Love*, 348 Ga. App. at 319 (2). Thus, that the Board members had exercised their discretion in investigating and deciding whether StadCo's interest was tax exempt became the law of the case.[11] What remained of the mandamus claim for the trial

---

[11] See *Welbon v. State*, 304 Ga. 729, 729-730 (1) (822 SE2d 277) (2018) ("Under the 'law of the case' doctrine, which is applicable to rulings made by appellate courts in both civil and criminal cases, any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be. OCGA § 9-11-60 (h)." (citations and punctuation omitted)).

court to resolve was whether the Board members had exercised that discretion in a manner that was unreasonable, arbitrary, and capricious.

The trial court concluded that the facts asserted in the pleadings and exhibits to the fourth amended petition showed that the Board members performed their duty to investigate diligently and to inquire into whether StadCo's interest was subject to ad valorem taxation. They considered arguments and documentary evidence presented during the Board's August 22, 2013 hearing, including the MOUs. The Exemption Decision was expressly based on evidence presented to the Board at the hearing. And although the evidence before the Board "may not have been overwhelming," as the trial court observed, the evidentiary concerns expressed by the appellants were "neither remarkable nor a sufficient basis to find that the [Board members had] acted arbitrarily or capriciously in determining that StadCo enjoyed a non-taxable usufruct interest."[12]

---

[12] The appellants complained that the Board members did not recall many of the details of the August 22, 2013 hearing or of the documents they

Further, when the Board members made the Exemption Decision, they did so "with the caveat that any substantial changes in the final agreement reached by the parties could lead the Board to reconsider its decision." The trial court then considered the SLM Agreement, as it was authorized to do, and determined that the agreement "did not expand or extend, either temporally or in any other materially relevant manner, StadCo's interest in GWCCA's property."[13] Thus, there was nothing in the SLM Agreement that would have triggered the Board members' duty to reevaluate the tax exempt status of StadCo's interest in the stadium. The trial court concluded:

> Thus a writ directing [the Board] to review subsequent agreements that merely fleshed out operational details (and did not materially change essential terms) of the [MOU and the Tri-Party MOU that the Board] originally assessed to transfer only a usufruct interest would be pointless. Moreover, it would be prescribing the method [the Board] is to use in conducting (and extending) its investigations, which, as previously

reviewed. They expressed concern that corporate interests may have participated in or influenced the Board's Exemption Decision.

[13] Contrary to the appellants' argument, the trial court did not weigh the evidence. Rather, it determined as a matter of law that the SLM Agreement did not alter the material terms of the MOUs. "The construction of a contract is a question of law for the court." OCGA § 13-2-1. The appellants have not demonstrated that the trial court's legal conclusion that the SLM Agreement did not materially change the essential terms of the MOUs was erroneous.

27

stated, [this court] is not free to do.

Thus, the allegations of the fourth amended petition disclosed with certainty that the appellants would not be entitled to relief under any state of provable facts asserted in support of their mandamus claim. Nor could they introduce evidence within the framework of the complaint sufficient to warrant a writ of mandamus. Consequently, the trial court did not err in dismissing the appellants' mandamus claim. See *R. A. F.*, 286 Ga. at 646 (1) (The trial court correctly found that the petition for mandamus is subject to dismissal because appellants failed to state a claim for mandamus relief.).

(b) The appellants sought to enjoin the Board members in their individual capacities from continuing to implement the Exemption Decision. The trial court correctly concluded that the appellants' claim for injunctive relief failed because, as explained in Division 3 (a), supra, the fourth amended petition and exhibits showed that the Board members' Exemption Decision was founded on evidence that StadCo's interest constituted a usufruct; they did not exercise their

discretion in an unreasonable, arbitrary, or capricious manner that would constitute a gross abuse of duty; and the SLM agreement did not materially change the nature of StadCo's interest in the stadium. Consequently, the appellants failed to show any legal basis for injunctive relief. See *Ianicelli v. McNeely*, 272 Ga. 234, 236 (2) (527 SE2d 189) (2000) (The trial court properly dismissed appellant's claim for injunctive relief because the acts he sought to enjoin did not establish a violation of public duty as a matter of law.).[14]

(c) The appellants brought a claim against the Board members in their individual capacities for a judgment declaring that the SLM Agreement conveyed a taxable estate for years as opposed to a nontaxable usufruct. The trial court explained that the appellants' claim for a declaratory judgment was subject to dismissal because,

---

[14] The trial court also noted that a permanent injunction was not authorized in this case because the fourth amended petition and exhibits did not demonstrate that this was a clear and urgent case to prevent a party from being damaged and left without an adequate remedy at law, citing *Smith v. DeKalb County*, 288 Ga. App. 574, 576 (2) (654 SE2d 469) (2007). Given our holding above, we need not address the trial court's alternative ground for dismissing the appellants' claim for injunctive relief.

even if the Board members' Exemption Decision (or failure to reconsider that decision) was arbitrary, capricious, or simply wrong in light of the SLM Agreement, the appellants did not face any uncertainty because of the Exemption Decision or the SLM Agreement. This ruling was correct.[15]

> The Declaratory Judgment Act is designed to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, see OCGA § 9-4-1, and the object of the declaratory judgment is to permit determination of a controversy before obligations are repudiated or rights are violated. The proper scope of declaratory judgment is to adjudge those rights among parties upon which their future conduct depends. Such relief is authorized when there are circumstances showing a necessity for a determination of the dispute to guide and protect the plaintiff from uncertainty and insecurity with regard to the propriety of some future act or conduct, which is properly incident to his alleged rights and which if taken without direction might reasonably jeopardize his interest.

(Citations and punctuation omitted.) *Walker v. Owens*, 298 Ga. 516,

---

[15] The trial court alternatively and correctly concluded that, notwithstanding the SLM Agreement, it could not "reverse" the Board's Exemption Decision because it was improper for it to do so when the Exemption Decision was supported by the evidence and there was no basis for concluding that the Board members had acted unreasonably, arbitrarily, and capriciously, in issuing the Exemption Decision, as explained in Division 3 (a), supra.

518-519 (783 SE2d 114) (2016). Because the appellants did not show they were in a position of uncertainty as to an alleged right, the trial court properly dismissed their claim for a declaratory judgment. See *Baker v. City of Marietta*, 271 Ga. 210, 214 (1) (518 SE2d 879) (1999) ("Where the party seeking declaratory judgment does not show it is in a position of uncertainty as to an alleged right, dismissal of the declaratory judgment action is proper; otherwise, the trial court will be issuing an advisory opinion, and the Declaratory Judgment Act makes no provision for a judgment that would be advisory." (citations and punctuation omitted)).

(d) The appellants also sought a judgment declaring that OCGA § 10-9-10, as amended, was unconstitutional. The appellants argued that, prior to its amendment in 1989, OCGA § 10-9-10 contained a clause that prohibited the GWCCA from extending its tax exempt status "to any lessee or other private person or entity." See Ga. L. 1989, p. 1198. The appellants argue that "the removal of this clause expanded the class of property holders entitled to the GWCCA tax exemption," and, because the amendment took effect

31

without a statewide referendum, it was unconstitutional. The appellants fail to acknowledge, however, that the trial court dismissed this count of the petition on an alternate ground.

The trial court held as follows:

The most basic reason why [the Petitioners'] challenge fails is that [OCGA § 10-9-10's] constitutionality has no bearing on the Exemption Decision. If [that Code section], as amended in 1989, created (illegally) the exemption Petitioners argue it did, i.e., an automatic exemption for private leaseholders of GWCCA's property, then that exemption would not be dependent on the terms of the MOUs entered into between StadCo and GWCCA. (Nor would the content and effect of the SLM Agreement matter.) Rather, all that [the Board] would have needed to determine was that GWCCA was leasing its property to StadCo . . . [and] GWCCA's statutory exemption would automatically transfer to the lessee. Here, however, the [Board] considered the details of the MOUs, repeatedly referenced the MOUs in its Exemption Decision, and even noted that its decision was dependent not on [OCGA § 10-9-10] but on the terms of the MOUs, such that if those terms were materially changed, [the Board's] exemption ruling might also change. Thus, while [the Board] could have been a tad clearer in its Exemption Decision by stating directly (instead of obliquely) that it found that GWCCA was transferring to StadCo a usufruct interest in its property, the terms of the Exemption Decision imply that conclusion and make sense only under that conclusion. In other words, [the Board] unanimously found that the interest GWCCA conveyed to StadCo constituted a

32

usufruct, something that is exempt from taxation not because of OCGA § 10-9-10 . . . but because a usufruct interest is not an estate and so is not taxable. …This simple fact makes the constitutionality of [OCGA § 10-9-10] irrelevant and is reason enough to find, as a matter of law, that Count III should be dismissed.

We agree with this reasoning. In light of the trial court's correct conclusion that the Board did not rely on an exemption allegedly expressed in OCGA § 10-9-10, but rather determined that StadCo's interest was a nontaxable usufruct,[16] we need not reach the trial court's alternative ruling on the merits of the appellants' challenge to the constitutionality of the statute.

(e) Finally, the appellants contend that the trial court erred in dismissing their claim for a tax refund on the ground that the claim was moot. In the fourth amended petition, the appellants asserted a new claim against Fulton County and the Fulton County Tax Commissioner, pursuant to OCGA § 48-5-380, seeking a refund of taxes that Fulton County taxpayers had allegedly illegally paid to the county. The trial court, however, did not allow the appellants to

---

[16] See footnote 2, supra.

amend the petition to add Fulton County or the Fulton County Tax Commissioner as parties. In a footnote to the portion of its order denying the appellants' motion to add parties, the trial court stated: "This ruling arguably has the effect of dismissing Count V, which seeks a refund for the class from the County and the Tax Commissioner. Without those party Respondents, there is no Count V." The appellants have not challenged this ruling. Consequently, we need not address the trial court's alternative "mootness" rationale for dismissing the appellants' claim for a refund.

*Judgment affirmed. All the Justices concur, except Peterson and Bethel, JJ., not participating, and McMillian, J., disqualified.*

Decided June 1, 2021.

OCGA § 10-9-10; constitutional question. Fulton Superior Court. Before Judge McBurney.

*Wayne B. Kendall*, for appellants.

*Holland & Knight, Robert S. Highsmith, Jr., Allen A. Hendrick, Phil J. George III; Detriss Thomas, Patrise M. Perkins-Hooker, Kaye W. Burwell, Cheryl M. A. Ringer; Christopher M. Carr, Attorney General, Alex F. Sponseller, Senior Assistant Attorney General, Julie A. Jacobs, John S. Forbes, Joseph L. Bearden, Assistant Attorneys General*, for appellees.