**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 31, 2022**

# In the Court of Appeals of Georgia

A21A1544. SOUTHEAST GEORGIA HEALTH SYSTEM, INC. v. FRANK W. BERRY, IN HIS CAPACITY AS COMMISSIONER, et al.

GOBEIL, Judge.

Southeast Georgia Health System, Inc. ("SGHS") appeals from the superior court's order dismissing its mandamus petition that sought to compel Frank W. Berry, Commissioner of the Department of Community Health ("DCH"), to investigate allegations that a rival hospital was running more operating rooms than it was permitted and to enforce the statutes that DCH administers. For the reasons set forth below, we affirm the trial court's decision.

We review de novo a trial court order granting a motion to dismiss a mandamus petition brought under OCGA § 9-11-12 (b) (6). *Hildebrand v. City of Warner Robins*, 354 Ga. App. 164, 164 (840 SE2d 503) (2020). The record in this case shows

that SGHS is a nonprofit corporation that operates two community hospitals in the cities of Brunswick (Glynn County) and St. Mary's (Camden County), both of which offer outpatient surgical services. Premier Surgery Center ("Premier") is a limited liability company that operates a surgical center in Glynn County, which also offers outpatient surgical services.

In January 2020, SGHS requested that DCH investigate whether Premier was running a third operating room ("OR") that was unauthorized under Georgia's Certificate of Need ("CON") program.[1] Under the CON program, an organization must submit an application and obtain a CON whenever it is developing, expanding, or offering a new health care facility or new institutional health service as srt forth in OCGA § 31-6-40 (a). The DCH is the administrative agency tasked with administering the CON program. OCGA § 31-6-21 (a). After reviewing its records, DCH determined that Premier was authorized to operate three ORs and declined to initiate a formal investigation into the matter. In April 2020, SGHS filed a request for

---

[1] The State of Georgia has enacted laws "to ensure access to quality health care services and to ensure that health care services and facilities are developed in an orderly and economical manner and are made available to all citizens and that only those health care services found to be in the public interest shall be provided in this state." OCGA § 31-6-1.

an administrative appeal of DCH's decision not to investigate. DCH denied the request.

Thereafter, in October 2020, SGHS filed a petition for a writ of mandamus, requesting that the superior court order Berry, in his capacity as DCH's Commissioner, "to determine that Premier's operation of a third OR is in violation of the CON laws and to issue a cease and desist order against further operation of the third OR." SGHS asserted that Berry was refusing to perform his non-discretionary duty to enforce the CON laws, and mandamus was its only avenue for relief.

Berry answered the mandamus petition, and filed a motion to dismiss the petition for failure to state a claim. The trial court granted Berry's motion to dismiss. Specifically, the trial court found that DCH had the authority, but not the duty, to conduct investigations into potential CON violations and seek injunctive relief to enforce the CON statutes. Thus, the trial court found that SGHS had not shown entitlement to mandamus relief and dismissed the petition. The instant appeal followed.

A writ of mandamus "is an extraordinary remedy to compel a public officer to perform a required duty when there is no other adequate legal remedy." *Love v. Fulton County Bd. of Tax Assessors*, 311 Ga. 682, 692 (3) (a) (859 SE2d 33) (2021)

3

(citation and punctuation omitted); see also OCGA § 9-6-20 (allowing writ of mandamus to compel public officials to performance if no other specific legal remedy exists). Mandamus is proper "only if (1) no other adequate legal remedy is available to effectuate the relief sought; and (2) the applicant has a clear legal right to such relief." *Love*, 311 Ga. at 692-693 (3) (a) (citation and punctuation omitted). Under Georgia law, SGHS has no other adequate legal remedy available to achieve the relief sought. *Diversified Health Mgmt. Svcs., Inc. v. Visiting Nurses Assn. of Cordele, Inc.*, 254 Ga. 500, 502 (4) (330 SE2d 885) (1985) (a competitor cannot sue for injunctive relief as an "interested person" under the CON statutes). Therefore, the only question remaining is whether SGHS showed a clear legal right to the relief sought.

Mandamus can lie to compel a public official to exercise discretion "but not to direct the manner in which that discretion is exercised." *Bland Farms, LLC v. Ga. Dept. of Agriculture*, 281 Ga. 192, 193 (637 SE2d 37) (2006). "[W]hether official action is required depends on the law governing the subject matter in question." *Bibb County v. Monroe County*, 294 Ga. 730, 735 (2) (b) (755 SE2d 760) (2014).

As described above, Georgia law authorizes DCH to govern the CON program. OCGA § 31-6-21 (a). The statute defining DCH's mandatory duties states that the "functions of the department shall be . . ." and then enumerates several duties,

4

including adopting rules and regulations to administer the CON program, and granting, denying, or revoking CON applications. OCGA § 31-6-21 (b) (1) - (12).

However, this same statutory scheme imposes only the authority, not the duty, to initiate a formal investigation into each and every alleged CON violation. OCGA § 31-6-45 (e). The statute states that DCH "shall have the authority to make public or private investigations . . . to determine whether all provisions of [the CON program have] been violated." Id. This discretionary language only vests DCH with the authority to conduct investigations, and does not impose a statutory duty to conduct a specific investigation every time an allegation is made.[2] Cf. *Nimmer v. Strickland*, 242 Ga. 430, 431 (1) (249 SE2d 233) (1978) (noting under statute regarding collection of sales tax, where the State Revenue Commissioner "'shall have authority' to proceed directly against the purchaser to recover the tax," the Commissioner could proceed against the purchaser because "shall have the authority" was permissive, not mandatory, language) (citation omitted). Emphasizing its discretionary direction, the statute goes on to state that investigations into potential statutory violations "*may* be

---

[2] Although "shall" typically conveys a mandate, it does not when couched within the larger phrase "shall have the authority[.]" See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 112-113 (2012) 1st ed. (noting "shall" is traditionally a mandatory word and creates a duty, unless context indicates otherwise).

5

initiated at any time in the discretion of the department. . . ." OCGA § 31-6-45 (e) (emphasis supplied). In summary, discretion in this context also means the discretion to decline to formally investigate possible CON violations. For these reasons, the trial court did not err in finding that SGHS did not show that it had a clear legal right to the remedy being sought, as DCH was not required to undertake the action sought.

SGHS argues that the trial court, in finding that DCH did not have a duty to investigate SGHS's allegations against Premier and enforce the CON statutes, disregarded a line of Supreme Court cases. Specifically, SGHS points to the *Roach/Stephenson* line of cases in which the Supreme Court found that the State Health Planning and Development Agency ("SHPA"), the precursor to the DCH, exceeded its statutory authority.

In the cases cited by SGHS, the SHPA was found to have exceeded its authority either by unilaterally issuing regulations exempting facilities from CON authorization or unilaterally determining that certain facilities did not require CON authorization.[3] See *HCA Health Svcs., Inc. v. Roach* ("*Roach I*"), 263 Ga. 798, 801

[3] All of these cases were decided prior to amendments to the CON statutes in 2008. Before 2008, a CON was required for the "construction, development, or other establishment of a new health care facility." OCGA §§ 31-6-2 (14) (A), 31-6-40 (a) (2002). In 2008, the language was changed to require a CON for "construction, development, or other establishment of a new, *expanded, or relocated* health care

6

(3) (b) (439 SE2d 494) (1994) (finding SHPA acted beyond its authority to waive CON requirements for relocation of a facility because Georgia law did not give SHPA authority to exempt facilities from CON authorization under these circumstances), overruled on other grounds, *Marsh v. Clarke County School Dist.*, 292 Ga. 28, 29-30 (732 SE2d 443) (2012); *North Fulton Med. Center, Inc. v. Roach* ("*Roach II*"), 265 Ga. 125, 126, 127-128 (2) (453 SE2d 463) (1994) (holding mandamus relief appropriate where SHPA adopted a rule exempting relocation of facilities from CON review on the morning of trial because the rule was issued after North Fulton had initiated the action, and North Fulton did not have an adequate legal remedy); *HCA Health Svcs. of Ga., Inc. v. Roach* (*Roach III*), 265 Ga. 501, 501, 502-503 (2) (458 SE2d 118) (1995) (holding SHPA's regulation, promulgated before trial, authorizing relocation of health care facilities within three miles without CON review invalid because SHPA did not have constitutional authority to decide what facilities were exempt from CON review); *North Fulton Med. Center v. Stephenson*, 269 Ga. 540, 541-542, 542-544 (1) (501 SE2d 798) (1998) (finding SHPA acted beyond its scope of authority in enacting a second relocation rule that granted SHPA the ability to

---

facility," and added certain exceptions. OCGA § 31-6-40 (a) (1) (2021) (emphasis supplied).

7

exempt from CON review the relocation of surgical centers because SHPA gave itself "the complete and unbridled authority" to determine which facilities were exempt from CON review, directly conflicting with the power of the General Assembly to determine the scope of a statute).

In contrast to the situations presented in the *Roach* and *Stephenson* cases, the DCH did not issue regulations outside of its statutory authority or otherwise act beyond its statutory authority. Instead, DCH declined to initiate a formal investigation of an alleged CON violation, a discretionary action under the relevant statutory scheme. And although the Supreme Court in *Roach I* stated that SHPA "does not have discretion in enforcing the CON program[,]" the context reveals that the Court was referring to the SHPA's decision to exempt a facility from the CON program without any statutory authority for its decision. *Roach I*, 263 Ga. at 800 (3). In the instant appeal, however, DCH did not exempt Premier from the CON requirement; it determined that, based on its records, Premier was operating within its approved CON limits, and declined to investigate further. Thus, we agree with the trial court that SGHS did not show that it was entitled to mandamus relief.[4] For these reasons, we

---

[4] Mandamus may also be appropriate when an official commits a gross abuse of discretion, meaning that the official performs an action in a way "that is arbitrary, capricious, and unreasonable." *Love*, 311 Ga. at 693 (3) (a); see also OCGA § 9-6-21

affirm the trial court's decision granting Berry's motion to dismiss SGHS's mandamus petition.

*Judgment affirmed. Barnes, P. J., and Markle, J., concur*.

---

(a) ("Mandamus shall not lie . . . to a public officer who has an absolute discretion to act or not to act unless there is a gross abuse of such discretion."). However, SGHS did not allege a gross abuse of discretion in its mandamus petition, and therefore to the extent is raises it now, the issue is waived. *Locke's Graphic & Vinyl Signs, Inc. v. Citicorp Vendor Finance, Inc.*, 285 Ga. App. 826, 828 (2) (a) (648 SE2d 156) (2007) ("An argument not raised in the trial court is waived and cannot be raised for the first time on appeal.").