**FIRST DIVISION
BARNES, P. J.,
MARKLE and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**March 20, 2026**

# In the Court of Appeals of Georgia

A26A0782, A26A0457. FULTON COUNTY BOARD OF COMMISSIONERS v. FULTON COUNTY REPUBLICAN PARTY (two cases).

BARNES, Presiding Judge.

These companion appeals arise from the trial court's grant of a writ of mandamus ordering the Fulton County Board of Commissioners ("the Commissioners") to seat Jason Frazier and Julie Adams, who had been duly nominated by the Fulton County Republican Party ("the Party") for two-year terms on the county's Board of Registration and Elections ("the BRE"). In Case No. A26A0782, the Commissioners argue that the trial court erred when it issued the writ, thereby directing the outcome of the Commissioners' vote and mandating the seating of Frazier and Adams. In Case No. A26A0457, the Commissioners argue that the trial

court erred when it held them in contempt for not seating Frazier and Adams. Because the trial court interfered with the constitutional prerogative of the Commissioners to appoint public officers, we agree and reverse in both cases.[1]

"In every case where a person is charged with contempt of court for alleged violations of a court's order, the legal correctness of the underlying order may be challenged on appeal." *Atlanta Journal-Constitution v. Jewell*, 251 Ga. App. 808, 809 (1) (555 SE2d 175) (2002). "The grant or denial of mandamus relief . . . lies largely in the discretion of the presiding judge. This Court will not interfere with a trial court's decision granting mandamus relief absent a showing that the court manifestly abused its discretion." (Citation modified.) *Burke County v. Askin*, 294 Ga. 634, 636-37 (2) (755 SE2d 747) (2014) (citation modified). But "[w]here the trial court reviews an official's exercise of discretion . . . the correct standard of review on appeal with respect to the mandamus order [is] whether there is any evidence supporting the decision of the local official, not whether there is any evidence supporting the decision of the superior court." *Gonzalez v. Miller*, 327 Ga. App. 264, 264 n. 4 (903 SE2d 920) (2024) (citation modified); see also *Burke County*, 294 Ga. at 637 (2), n. 4. As to the

---

[1] The Commissioners' motion to expedite Case No. A26A0457 is denied.

contempt finding, which was based on an analysis of the requirements set out in the local law at issue, we review the trial court's conclusion de novo. See *Vaughn v. Vaughn*, 365 Ga. App. 195, (198) (1) (877 SE2d 860) (2022) ("where a contempt action turns on the meaning of terms [in a statute or ordinance], construction of those terms is a question of law that is subject to de novo review on appeal.").

The relevant facts are not in dispute. Under OCGA § 21-2-40 (b), the General Assembly is empowered to create "a board of elections and registration" for any county. In 2019, the General Assembly amended an earlier local act creating a "board of elections and registration for Fulton County," as follows:

> The board shall be composed of five members, each of whom shall be an elector and resident of Fulton County, who *shall be appointed in the following manner*:
>
> (1) Two members *shall be appointed* by the governing authority of Fulton County *from nominations made by the chairperson of the county executive committee of the political party whose candidates* at the last preceding regular general election held for the election of all members of the General Assembly *received the largest number of votes* in this state . . . ;
>
> (2) Two members *shall be appointed* by the governing authority of Fulton County *from nominations made by the chairperson of the county executive*

*committee of the political party whose candidates . . . received the second largest number of such votes*; and

(3) One member shall be appointed by the governing authority of Fulton County, which member shall be designated permanent chairperson of the board.

2019 Ga. L. 4181, § 1 (emphasis supplied), amending 1989 Ga. L. 4577. Section 4 of the same local law, unchanged since 1989, provides in relevant part:

The appointment of each member [of the BRE] shall be made no later than 30 days preceding the date at which each member is to take office by notifying the clerk of the Superior Court of Fulton County in writing of the name and address of the person appointed. . . . In the event the appointing authority fails to make a regular appointment within the time specified in this section or fails to make an interim appointment to fill a vacancy within 90 days after the creation of such vacancy, such regular or interim appointment shall be made forthwith by the governing authority.

1989 Ga. L. 4577.

On March 21, 2025, the BRE requested that the Party submit two nominees. On May 15, the Party provided notice of its nomination of Adams and Frazier to the clerk of the Commissioners, including biographies of both. On May 21, the Commissioners

met and considered the BRE nominees named by both political parties. The Commissioners voted to seat the two Democratic nominees, but voted to "file" – that is, to table – the nominations of Adams and Frazier by a vote of five to two. According to the transcript of the May 21 meeting, some Commissioners declined to appoint Adams because of her refusal to certify the 2024 election results as well as her involvement in lawsuits challenging those results. Some Commissioners also declined to appoint Frazier because of his alleged involvement in filing registration challenges to Fulton County voters.[2]

On June 13, 2025, the Party filed a verified petition for a writ of mandamus asking the trial court to order the Commissioners to appoint its nominees to the BRE. Both sides stipulated to the admissibility and authenticity of the transcript of the May 21, 2025 hearing before the Commissioners. After oral argument, the trial court granted a writ ordering the Commissioners to appoint Adams and Frazier to the BRE. The trial court found that the local law's instruction that the Commissioners "shall" appoint the nominees of each part was "mandatory" rather than "merely directory"

---

[2] According to the transcript of the hearing, the Party had nominated Frazier in 2023. Though the parties disagree on some details of this incident, it appears that after the Commission rejected Frazier and the Party filed a lawsuit, Frazier's nomination was withdrawn and the lawsuit was dismissed without prejudice.

and that the Commissioners as a whole "do[] not have discretion to disapprove an otherwise qualified nominee."

When the Commissioners took no further action on the nominations, the Party filed a motion for contempt. After a hearing on the contempt motion was scheduled, the Commissioners filed papers including a motion to stay and a notice of appeal seeking immediate review in the Supreme Court of Georgia. Our Supreme Court transferred these motions to this Court, which denied a stay on August 19, 2025. A second contempt hearing was held on August 27, 2025, at the conclusion of which the trial court entered an order finding some Commissioners in civil contempt, including an ongoing fine of $10,000 per day, which they could purge by appointing Frazier and Adams within two days. The Commissioners filed a motion for supersedeas, which was granted, and these appeals followed.

1. The first question before us is whether the local law's provision that two BRE members "*shall* be appointed by the governing authority of Fulton County from nominations made by" the leadership of the county Republican Party bars the Commissioners from declining to make such an appointment. (Emphasis supplied.) We conclude that when the local law speaks of the Commissioners' power to

"appoint," it contemplates the exercise of that well-established power as a discretionary one not subject to direction by the courts in the absence of gross abuse, which cannot be found here.

> Mandamus is an extraordinary remedy to compel a public officer to perform a required duty when there is no other adequate legal remedy. The writ of mandamus is properly issued only if (1) no other adequate legal remedy is available to effectuate the relief sought; and (2) the applicant has a clear legal right to such relief. Further, for mandamus to issue, the law must not only authorize the act to be done, but must require its performance. Where performance is required by law, a clear legal right to relief will exist either where the official or agency fails entirely to act or where, in taking such required action, the official or agency commits a gross abuse of discretion. Mandamus shall not lie as to a public officer who has an absolute discretion to act or not to act unless there is a gross abuse of such discretion. However, mandamus shall not be confined to the enforcement of mere ministerial duties. A gross abuse of discretion occurs where an official performs a discretionary duty in a manner that is arbitrary, capricious, and unreasonable.

*Love v. Fulton County Bd. of Tax Assessors*, 311 Ga. 682, 692-693 (3) (a) (859 SE2d 33) (2021) (citation modified), disapproved on other grounds, *Bray v. Watkins*, 317 Ga. 703, 704-705 (895 SE2d 282) (2023); see also *Dunn v. City of Stonecrest*, 368 Ga. App. 736, 744 (2) (890 SE2d 781 )(2023) ("[W]here the applicable law vests the official or

agency with discretion with regard to whether action is required in a particular circumstance, mandamus will not lie, because there is no clear legal right to the performance of such an act.") (citation modified). "[T]he burden is upon the party seeking mandamus to show the existence of such a duty." *Forsyth County v. White*, 272 Ga. 619, 620 (2) (532 SE2d 392) (2000).

As a preliminary matter, there is no dispute that the Board of Commissioners of Fulton County is what Georgia law, including the local law, calls the "governing authority" of that county.[3] OCGA § 36-5-22.1 (a) (5) thus provides that "[t]he governing authority of each county has original and exclusive jurisdiction" over matters including "[t]he filling of all vacancies in county offices unless some other body or official is empowered by law to so fill such vacancy[.]" See also *Krieger v. Walton Cty. Bd. of Comm'rs*, 271 Ga. 791, 792-793 (1) (524 SE2d 461) (1999) (Art. IX, Sec. II, Par. I of the Georgia Constitution of 1983 "provides for home rule for counties," including "the personnel subject to the jurisdiction of the county governing authority"; a board of commissioners had the right to amend a local act

---

[3] In the local law's terms, the Board of Commissioners is thus both the "appointing authority" and the "governing authority." 1989 Ga. L. 4577.

such that it, and not the chairperson, had the authority to hire, supervise and discharge county personnel) (quotation marks omitted).

It has long been the law in Georgia that "[w]here an act is within the power of the county commissioners, the manner of doing it must be largely left to their discretion, and that discretion must be a broad one." *Moore v. Maudlin*, 199 Ga. 780, 782 (1) (35 SE2d 511) (1945). "There should be no interference had" by any body, including the courts of this State, "unless it is clear and manifest that [the county commissioners] are abusing the discretion vested in them by law." Id. at 782-783 (1) (direction and control of county property was delegated to the commissioners and within their discretion to manage such that the trial court did not err in denying a motion for new trial concerning a petition for mandamus); see also *Lindsay v. Guhl*, 237 Ga. 567, 570-574 (I), (II) (229 SE2d 354) (1976) (no error in denying a writ of mandamus and an interlocutory injunction when a county board of commissioners was acting within its authority and did not abuse its discretion in selecting a waste disposal site).

As we consider the local law's command that the members of the BOE "shall be appointed" by the Commissioners, 2019 Ga. L. 4181, § 1, "we must presume that

the General Assembly meant what it said and said what it meant." *Deal v. Coleman*, 294 Ga. 170, 172 (751 SE2d 337) (2013) (citation modified).

> To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English would. . . . [I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end.

Id. at 172-173 (citation modified). There is nothing ambiguous about the local law: it simply requires that the Commissioners "shall" appoint BRE members "from nominations made by the chairperson of the county executive committee of the political party whose candidates at the last preceding regular general election held for the election of all members of the General Assembly" received the "largest" and the "second largest number of votes in this state[.]"

The local law thus bars the Commissioners from making appointments of any candidates not nominated by the relevant political party, but it also uses the longstanding and well-understood term "appoint" for the power the Commissioners must exercise. When the General Assembly used these unambiguous terms, we presume that it did so with the full knowledge of their history, including the inherently

10

discretionary nature of the appointment power. As we held in *Housing Authority of City of Macon v. Ellis*, 288 Ga. App. 834 (655 SE2d 621) (2007), a city mayor who is granted the authority to make an appointment to the board of a city housing authority without first submitting his choice to the city council was exercising a statutory power that was "unconditional." Id. at 836. As here, the statute at issue provided that the mayor "shall appoint" a member of the local housing authority, with "[t]his appointment power [being] unconditional." Id. at 836. As in section 4 of the local law before us, moreover, another section of the housing authority statute "merely explains what occurs" when the appointing authority "fails to make appointments[.]" Id.

Some of the Commissioners concluded that Frazier and Adams should not serve on the BRE. In doing so, they were exercising their constitutional prerogative to exercise their judgment as to these appointments on behalf of the people who elected them. In *Rogers v. Med. Ass'n of Ga.*, 244 Ga. 151 (259 SE2d 85) (1979), our Supreme Court reversed a writ requiring the Governor to accept recommendations from a private party to fill vacancies on the State Board of Medical Examiners, as follows:

> Fundamental principles embodied in our constitution dictate that the
> people control their government. "All government, of right, originates

11

with the people, is founded upon their will only, and is instituted solely for the good of the whole. Public officers are the trustees and servants of the people, and at all times, amenable to them." [See Ga. Const. of 1983, Art. I, Sec. II, Par. I.] "The people of this State have the inherent, sole and exclusive right of regulating their internal government[.] " [See Ga. Const. of 1983, Art. I, Sec. II, Par. II.] This is accomplished through elected representatives to whom is delegated, subject to constitutional limitations, the power to regulate and administer public affairs, including the power to provide for the selection of public officers. These constitutional provisions mandate that public affairs shall be managed by public officials who are accountable to the people. *As important as any other governmental power is the power to appoint public officials. . . .* The General Assembly may, within constitutional limitations, establish qualifications for public office and designate a governmental appointing authority. But *it cannot delegate the appointive power to a private organization.* Such an organization, no matter how responsible, is not in the public domain and is not accountable to the people as our constitution requires[.]

Id. at 153-154 (2) (citation modified); see also *Delay v. Sutton*, 304 Ga. 338, 341-342 (818 SE2d 659) (2018) (affirming a writ barring the delegation of the power to appoint members of a county Board of Ethics to a private organization).

Here, as in *Ellis* and *Rogers,* we cannot authorize judicial interference with the Commissioners' exercise of their appointment power when they did not grossly abuse

their discretion in refusing to seat the Party's nominees to the BRE. Nor can we say that there is no remedy for the Commissioners' refusal to make these appointments when the Party can, as in the past, submit new nominees to the Commissioners. Because the Commissioners were acting within their own lawful and discretionary authority when they declined to seat the BRE nominees at issue, we reverse the trial court's grant of a writ of mandamus as an abuse of that court's discretion. See *Madison v. Old 41 Farm, LLC*, 370 Ga. App. 172, 178-179 (1) (b) (894 SE2d 232) (2023) (reversing trial court's grant of a writ of mandamus when the city manager had not grossly abused her own discretion in denying a request for a favorable sewer availability letter).

2. It follows from our conclusion that the trial court abused its discretion when it issued the writ of mandamus that its order holding the Commissioners in contempt for violating that writ must also be reversed. *Jewell*, 251 Ga. App. at 809 (1) ("Our determination that these underlying orders are erroneous and must be vacated also has the effect of dissolving the civil contempt order which is based upon the violation of" those orders).

*Judgments reversed. Markle and Hodges, JJ., concur.*

13