**FIRST DIVISION
BARNES, P. J.,
BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**July 1, 2022**

# In the Court of Appeals of Georgia

A22A0316. MAYORGA v. BENTON.

BROWN, Judge.

Luis Mayorga appeals from the trial court's order dismissing his complaint for intentional infliction of emotional distress and negligence against Jim Benton d/b/a Vital Record Solutions ("Vital Records").[1] He contends that the trial court drew impermissible inferences and made erroneous legal conclusions in its ruling on his intentional infliction of emotional distress claim. With regard to his negligence claim, Mayorga asserts that the trial court should have applied the pecuniary loss exception to the impact rule. For the reasons explained below, we reverse the dismissal of his

---

[1] While Mayorga's complaint also named 1861 Southern Cremations and Funerals, LLC ("Southern Cremations") as a defendant, Southern Cremations resolved Mayorga's claims against it. Accordingly, the only appellee in this case is Vital Records.

claim for intentional infliction of emotional distress and affirm the trial court's dismissal of Mayorga's ordinary negligence claim.

> On appeal, we review the trial court's grant of a motion to dismiss de novo. A motion to dismiss for failure to state a claim upon which relief can be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.

(Citations and punctuation omitted.) *Dennis v. City of Atlanta*, 324 Ga. App. 659 (751 SE2d 469) (2013). Additionally,

> it is well established that a plaintiff is not required to plead in the complaint facts sufficient to set out each element of a cause of action so long as it puts the opposing party on reasonable notice of the issues that must be defended against. And, in light of the minimal requirements of notice pleading, broad and conclusory allegations are not fatal to a plaintiff's claim at the motion-to-dismiss stage.

(Citation and punctuation omitted.) *Hill v. Bd. of Regents of the Univ. System of Ga.*, 351 Ga. App. 455, 468 (3) (829 SE2d 193) (2019).

*Allegations in the Complaint*

Mayorga's complaint contains the following allegations: Mayorga's 15-year-old daughter, Kaitlyn, committed suicide on January 6, 2021, and Mayorga found her body; Mayorga hired Southern Cremations, who in turn hired Vital Records to produce Kaitlyn's death certificate; Mayorga is in a same-sex marriage and his husband shares the same last name; Southern Cremations had actual knowledge of Mayorga's same-sex marriage and Kaitlyn's death from suicide; Vital Records had actual or constructive knowledge of the same; Vital Records prepared a death certificate stamped "DRAFT" and "together with" Southern Cremations delivered it to Mayorga and his husband by e-mail on January 21, 2021, after 5:00 p.m.; and the e-mail was sent by a Southern Cremations employee. The body of Mayorga's complaint includes an image of a portion of the draft certificate which states: "I AM SO CONFUSED LOL - THE STEP DAD AND THE FATHER HAVE THE SAME LAST NAME?" According to Mayorga's complaint:

> It was not "confusing" that Plaintiff Mayorga and his husband had the same last name. Indeed, it was plain from the information provided in

3

the death certificate that Mayorga was in a same sex marriage, and that Kaitlyn had two dads. . . . The statement "I AM SO CONFUSED LOL" was intended to, and did, make fun of Plaintiff Mayorga's sexual orientation and make light of Kaitlyn's suicide, which also impugned the home environment Mayorga provided to his daughter. It was not a joke — and certainly not funny — to Mayorga to make fun of the circumstances surrounding Kaitlyn's death or her home life. . . . The statement . . . subjected [Mayorga] to thoughts that his same sex marriage contributed to his daughter's depression and suicide.

The complaint stated that "Mayorga learned of the death certificate and its callous mockery of both his daughter's suicide and his same-sex marriage on January 23, 2021[,] the same day he went to retrieve Kaitlyn's ashes from Defendant Southern Cremations."

The complaint asserts that Mayorga's husband took him to the hospital in fear for his life the day after Mayorga learned about the draft death certificate. It further alleges that a medical provider wrote the following about Mayorga's admission:

The patient reports that he became suicidal shortly after finding his daughter dead. He went to pick up her ashes on Saturday, and reports that the people at the funeral home made a mockery of him being involved in a same sex marriage, instead of having empathy about his daughter's death. He reports that after that occurred, he had enough, and truly felt like ending his life, so he could be with his daughter.

4

On January 26, 2021, Mayorga was released from the hospital, where he incurred medical expenses totaling $11,194.50.

Mayorga's complaint sought to recover damages from Vital Records and Southern Cremations based upon negligence and intentional infliction of emotional distress. He alleges that the defendants "acted in concert" to cause emotional distress "by making fun of his daughter's suicide and his sexual orientation and most importantly tying the two issues together *because [they were] on Kaitlyn's death certificate.*" (Emphasis in original.) According to Mayorga, the defendants "denigrat[ed] Kaitlyn's home life and rais[ed] the question in Mayorga's mind of his own potential culpability in his daughter's suicide." His complaint specifically alleges that he "was already suffering from depression and grieving the loss of his daughter — a fact which was known or should have been known to Defendants — and Defendants' misconduct aggravated [his] existing mental and emotional condition." Finally, the complaint states that the "Defendants' actions showed wil[ ]ful misconduct, malice, fraud, wantonness, oppression, and that entire want of care" such that punitive damages are warranted under OCGA § 51-12-5.1.

*Documents Attached to the Complaint*

5

Mayorga attached a copy of the draft death certificate to the complaint. Several information boxes on the death certificate were either incomplete or blank with a capital "X" placed inside the box. These boxes included: mother's maiden name; informant's name; father's full name; decedent's education; and disposition date. Mayorga was listed as Kaitlyn's father and his husband, Matthew Rogers Mayorga, was listed as the informant with a relationship to Kaitlyn of stepdad. In a blank space at the bottom of the death certificate, the following words appeared to the right of a capital "X" identical to that placed in several of the information boxes:

> MOTHER'S MAIDEN NAME
> EDUCATION - LAST GRADE COMPLETED
> I AM SO CONFUSED LOL - THE STEP DAD AND THE FATHER
> HAVE THE SAME LAST NAME?

A "true and correct copy" of the e-mail was also attached to the complaint. This e-mail states in its entirety:

> Here is the attachment to the revised draft with handwritten corrections. Please look over the personal information and if there are any corrections you can e[-]mail them [to e-mail address for Southern Cremations employee]. If everything is correct you can go ahead and print it out, sign it and e[-]mail it back with Approval + Name in the subject line or you can respond to this e[-]mail saying you approve of the draft. Thank you.

The e-mail was sent to an address similar to Mayorga's husband's name. The remaining attachment to the complaint documents Mayorga's medical expenses. It shows that he received in-patient treatment from January 24, 2021 to January 27, 2021.

*Procedural History*

The defendants subsequently moved to dismiss Mayorga's complaint pursuant to OCGA § 9-11-12 (b) (6) for failing to state a claim. In a consolidated order, the trial court granted both motions on the pleadings without holding a hearing.[2] It reasoned that Mayorga's negligence claim failed because there was no impact and "no evidence that Defendants['] conduct was malicious, wil[ ]ful or wanton," and nothing on the face of the pleadings showed that the conduct was "directed to the Plaintiff."

---

[2] The trial court's order does not state that it would consider the documents attached to the complaint when ruling on the motion to dismiss, and its order does not cite existing legal authority for the consideration of exhibits attached to a complaint when ruling on a motion to dismiss. See, e.g., *Stendahl v. Cobb County*, 284 Ga. 525, 526 (1), n.2 (668 SE2d 723) (2008) ("'A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes' (OCGA § 9-11-(c)) and, if incorporated into the pleadings, may be considered when deciding a motion to dismiss for failure to state a claim without converting the motion into one for summary judgment."). Based upon our review of the entirety of the trial court's order, we do not believe it relied upon the documents attached to the complaint when ruling on the motion to dismiss.

In its view, "[t]he language of the document appears to be internal and shared amongst themselves and not directed towards [Mayorga]." Finally, it found that Mayorga's intentional infliction of emotional distress claim should be dismissed because the alleged conduct did not rise to the level of extreme and outrageous as a matter of law and was not directed at Mayorga.

1. *Intentional Infliction of Emotional Distress*. In related enumerations of error, Mayorga contends that the trial court erred by dismissing his intentional infliction of emotional distress claim on the grounds that the alleged conduct was not sufficiently extreme or outrageous or directed at him.[3] As discussed below, we agree that Mayorga's intentional infliction of emotional distress claim survives a motion to dismiss.

> Georgia has long recognized a cause of action for intentional infliction
> of emotional distress. However, the burden which the plaintiff must
> meet in order to prevail in this cause of action is a stringent one. To
> prevail, a plaintiff must demonstrate that: (1) the conduct giving rise to

---

[3] While Mayorga also appears to take issue with the trial court's sua sponte conclusion on one of these issues, "a trial court has the authority to dismiss claims sua sponte and without a hearing if it can determine from the pleadings that the claims cannot succeed as a matter of law." (Citations and punctuation omitted.) *Perry Golf Course Dev. v. Housing Auth. of City of Atlanta*, 294 Ga. App. 387, 392-393 (6) (670 SE2d 171) (2008).

the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. The defendant's conduct must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law.

(Citations and punctuation omitted.) *Racette v. Bank of America*, 318 Ga. App. 171, 179 (3) (733 SE2d 457) (2012). Additionally, "it is well settled that the alleged conduct must have been directed at the plaintiff in order to be actionable under a theory of intentional infliction of emotional distress." (Citations and punctuation omitted.) *Doe v. Roe*, 362 Ga. App. 23, 29 (3) (d) (864 SE2d 206) (2021).

(a) In support of his argument that his complaint alleges conduct that was sufficiently outrageous, Mayorga points to the following authority:

Comment f, § 46 (1), of the Restatement (Second) states that the extreme and outrageous character of the conduct "may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know."

9

*Bridges v. Winn-Dixie*, 176 Ga. App. 227, 230 (1) (335 SE2d 445) (1985). See also *Williams v. Voljavec*, 202 Ga. App. 580, 582 (415 SE2d 31) (1992) (physical precedent only).

The majority of cases addressing whether a particular claim rises to the level of extreme or outrageous conduct involve summary judgment and evidence presented outside of the parties' pleadings, including the cases Vital Records cites in its brief to this Court. See, e.g., *Roddy v. Tanner Med. Center*, 262 Ga. App. 202, 205-206 (585 SE2d 175) (2003); *Northside Hosp. v. Ruotanen*, 246 Ga. App. 433, 436 (541 SE2d 66) (2000). There are relatively few reported cases addressing the *dismissal* of a claim for intentional infliction of emotional distress, particularly with regard to whether the alleged conduct is sufficiently outrageous. In *Walker v. Walker*, 293 Ga. App. 872 (668 SE2d 330) (2008), we reversed the trial court's dismissal of a pro se plaintiff's complaint, finding that his

> complaint asserted that the defendants' intentional conduct was extreme and outrageous and that this caused him severe emotional distress. The claim was thus properly pled as to its essential elements. See *Love v. Morehouse College*, 287 Ga. App. 743, 746 (652 SE2d 624) (2007) (reversing trial court's grant of motion to dismiss claims including intentional infliction of emotional distress; "measuring the basis of those claims at this early stage of the proceedings is premature").

10

Id. at 874-875 (2) (b). See also *Nicholson v. Windham*, 257 Ga. App. 429, 433-434 (3) (571 SE2d 466) (2002) (trial court erred in dismissing intentional infliction of emotional distress claim premised upon employers' conduct in soliciting plaintiff to participate in illegal real estate scheme and instructing her not to disclose it); *Gillis v. American Gen. Life & Acc. Ins. Co.*, 222 Ga. App. 891, 893 (476 SE2d 648) (1996) (reversing trial court's dismissal of intentional infliction of emotional distress claim involving disparagement of plaintiff in the business community). Compare *Renton v. Watson*, 319 Ga. App. 896, 903-904 (3) (739 SE2d 19) (2013) (affirming trial court's dismissal of intentional infliction of emotional distress claim where defendant withdrew application for arrest warrant containing false allegations *before* the plaintiff was arrested); *Racette*, 318 Ga. App. at 173, 179-180 (3) (affirming trial court's dismissal of intentional infliction of emotional distress claim premised on defendants' conduct in conducting a foreclosure sale despite alleged knowledge of inaccuracies in published foreclosure advertisement with regard to senior lien status and deed book and page numbers); *Scouten v. Amerisave Mtg. Corp.*, 284 Ga. App. 242, 244 (3) (643 SE2d 759) (2007) (affirming grant of motion to dismiss because "complaint does not allege or show that [any of the defendant's employees'] conduct was 'extreme' or 'outrageous'" in case involving alleged unnecessary dissemination

11

of information to other employees that plaintiff/employee had been discharged for theft), reversed on other grounds, *Scouten v. Amerisave Mtg. Corp.*, 283 Ga. 72 (656 SE2d 820) (2008); *Lincoln Nat. Life Ins. Co. v. Davenport*, 201 Ga. App. 175, 176 (410 SE2d 370) (1991) (affirming dismissal of intentional infliction of emotional distress claim premised upon the denial of benefits under a disability insurance policy).

In this case, Mayorga's complaint sets forth all of the essential elements of a claim for intentional infliction of emotional distress and alleges that both defendants actually knew that his daughter had committed suicide and that he was in a same-sex marriage and that based on this knowledge, there was no actual confusion about the two last names listed for the father and stepfather. It further alleged that the defendants made the statement "I am so confused LOL" with the intent to "make fun of Mayorga's sexual orientation" on a death certificate after his child had committed suicide and that they acted in concert to do so. Finally, it asserted that both defendants "were specifically and acutely aware" that he "was grieving" and "especially vulnerable to the infliction of emotional and mental distress."

It is within the understanding of an average member of the community that the parent of a teenager who dies from suicide struggles with the question of why their

12

child would take such a step and what about that child's life could have motivated them to do so. It is similarly understood that teenagers want to fit in and fear being judged and teased for being different. With these common understandings in mind and construing the complaint in the light most favorable to Mayorga, we cannot say that it is not outrageous, *as a matter of law*, for a professional *working in the field of issuing death certificates* to feign confusion and laugh about why a dead teenager's gay fathers have the same last name, intentionally place these comments on any version of a death certificate, and intentionally share these comments, which could be understood to make fun of the dead teenager's home life, with her grieving father. Accordingly, we cannot conclude, at this early stage of the proceedings, that Mayorga would not be entitled to relief under any state of provable facts with regard to the outrageous aspect of his claim. Cf. *McCoy v. Ga. Baptist Hosp.*, 167 Ga. App. 495, 498-499 (2) (306 SE2d 746) (1983) (finding genuine issue of material fact precluded summary judgment on mother's intentional infliction of emotional distress claim where hospital employee telephoned mother, with known emotional problems following stillbirth of baby, to state that infant's body was in a freezer and the mother should come retrieve it).

13

Presiding Judge Doyle's dissent relies almost exclusively upon *summary judgment and jury verdict* cases to conclude that Mayorga's complaint fails to allege facts sufficiently outrageous to survive a motion to dismiss for failure to state a claim.[4] And she asserts that "the words as written on the death certificate . . . must be viewed in isolation because Mayorga does not complain of a series of acts."[5] In our view, the analysis in this particular case should not be limited to the universe of facts contained within the exhibits to the complaint as proposed by Presiding Judge Doyle's dissent. This is not a case addressing a contract or a will. Compare *Lord v. Lowe*, 318 Ga. App. 222, 223-224 (741 SE2d 155) (2012) (affirming trial court's grant of motion to dismiss based upon condition of bond agreement attached to

---

[4] The sole motion to dismiss case upon which she relies is clearly distinguishable from the facts presently before us. See *Renton*, 319 Ga. App. at 903-904 (3) (defendant's conduct not outrageous in case where defendant withdrew application for arrest warrant containing false allegations *before* the plaintiff was arrested).

[5] The citation to a summary judgment case "indicating that a series of acts allegedly causing emotional distress should be viewed cumulatively, rather than in isolation," *Mears v. Gulfstream Aerospace Corp.*, 225 Ga. App. 636, 640 (2) (a) (484 SE2d 659) (1997), does nothing to support this conclusion. Relying on the fact that Mayorga "does not complain" of a series of acts is not the proper analysis for a motion to dismiss. The question is whether the claimant could "possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought." *Dennis*, 324 Ga. App. at 659.

14

plaintiff's complaint). Moreover, the narrow view of the facts proposed by Presiding Judge Doyle's dissent[6] ignores the rule "that the extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress." *Bridges*, 176 Ga. App. at 230 (1). This Court should not decide the propriety of this particular motion to dismiss based upon cases in which the parties have had an opportunity to fully develop the facts demonstrating the outrageous nature of the conduct at issue, particularly when the complaint alleges sufficient facts to conclude that Mayorga was especially susceptible to emotional distress following his teenage daughter's suicide, and that Vital Records had the requisite knowledge.

In Presiding Judge Dillard's dissent, he concludes that "the statement in the draft death certificate permits multiple interpretations by an objective person, and this, in turn, precludes Mayorga's [ ] claim from going forward." He cites no Georgia cases supporting this conclusion in the context of a motion to dismiss. Instead, he relies upon non-binding cases from other jurisdictions concluding that the particular

---

[6] She points to the lack of an "explicit" mocking of Mayorga's sexual orientation, taking a hypertechnical and literal view of the words used on the death certificate. This approach fails to take into account that intentionally sly and subtle mocking can in *some* circumstances be just as hurtful and outrageous as that which is explicit.

15

vague threat before the court was not sufficient to withstand a motion to dismiss. An examination of the facts before each of those courts shows they are readily distinguishable and that many involved statements made in the context of domestic disputes and divorce proceedings.[7] None of these cases remotely address language — which Presiding Judge Dillard recognizes could be shown to have been intended to

---

[7] See *Steel v. City of San Diego*, 726 FSupp.2d 1172, 1188 (D), 1191 (D) (4) (S.D. Cal. 2010) (defendant stated "you have no idea who you're fucking with" when serving plaintiff with divorce papers); *Cochran v. Cochran*, 65 Cal. App. 4th 488, 492 (1998) (during his dispute with his ex-girlfriend, attorney Johnnie L. Cochran, Jr., left message on son's answering machine that said he was "'going to go down and deliver for [his ex-girlfriend's daughter] the Value Jet around the world vacation package. She can fly any time she wants as soon as they start flying again. . . . A little special thing I got for her.' This message referred to the then recent crash of a Value Jet airliner in the Florida everglades which killed all aboard."); *Maher v. Staub*, No. 09-8646 (JCx), 2010 U. S. Dist. LEXIS 8412 (C.D. Cal. Jan. 4, 2010) (following statements made by an ex-wife during Real Housewives of New Jersey did not rise to the level of extreme and outrageous: "Kevin Maher is 'going down'" and the ex-wife "has 'fans and friends who would protect her'"); *Santarsiero v. Martin*, No. 2:20-cv-00535-FtM-29NPM, 2021 LEXIS 127193 (II) (B) (2)-(3) (M.D. Fla. July 8, 2021) (in ongoing dispute over common areas between residents of condominium complex, defendants' conduct, including shouting things like "'fat, ugly, and disgusting'"; sending e-mail "stating that plaintiffs made a terrible mistake filing a lawsuit against him, and stating that plaintiffs have to 'feel the pain'" and have "'awakened the beast'"; barging into plaintiff's apartment to tell her to "'back off'"and breaking into her apartment while she was on Zoom meetings, did not rise to the level of outrageous conduct sufficient to survive motion to dismiss); *Saadi v. Maroun*, No. 8:07-cv-1976-T-24-MAP, 2008 LEXIS 116658 (M.D. Fla. September 9, 2008) (defendant posted statements online over course of two years that the plaintiff, an attorney, "acted immorally, illegally, and unprofessionally").

16

mock the sexual orientation of the parents of a teenager who had committed suicide — placed on a death certificate by a professional in that industry. They are therefore unpersuasive.

In sum, after comparing the facts alleged in this case to the facts of other Georgia cases in which claims for intentional infliction of emotional distress survived a motion to dismiss, we cannot say that the facts of this case are so qualitatively different that the plaintiff's complaint should not also survive. See, e.g., *Gillis*, 222 Ga. App. at 893 (disparagement of plaintiff in business community). While we conclude that Mayorga's complaint survives this early stage of litigation, we express no opinion as to the merits of this case at the summary judgment or directed verdict stage.

(b) With regard to whether a dismissal was warranted based on the trial court's conclusion that the conduct was not directed towards Mayorga, we agree with Mayorga's argument that the trial court failed to construe the allegations of the complaint in his favor. The trial court's order states that "[t]he language of the document *appears* to be internal and shared amongst themselves and not directed towards [Mayorga]." (Emphasis supplied.) While discovery in this case ultimately may prove the trial court's assumption correct, *Gillis*, 222 Ga. App. at 893, such

17

assumptions are improper at the motion to dismiss stage, particularly when Mayorga's complaint alleges that the defendants acted in concert.[8] Discovery in this case could reveal evidence showing that the defendants had communications outside of the e-mail attached to the complaint that would support the conclusion that the conduct was directed at Mayorga.

(c) Vital Records contends that the exhibits attached to the complaint mandate the conclusion that it did not direct its conduct at Mayorga. Assuming, without deciding, that these documents can properly be considered on motion to dismiss without converting the motion to one for summary judgment,[9] they do not change our conclusion that the trial court erred by dismissing the intentional infliction of emotional distress claim.[10] If the defendants acted in concert to intentionally harm Mayorga as alleged in the complaint, the fact that Southern Cremations sent the e-

---

[8] For the same reason, the assumptions made by the dissent with regard to whom the e-mail was sent are also inappropriate.

[9] See *Williams v. DeKalb County*, ___ Ga. App. ___ (Case No. A22A0508, decided July 1, 2022).

[10] While Presiding Judge Doyle's dissent cites general law regarding the controlling effect of exhibits over conflicting allegations in a complaint, nothing in the exhibits conflicts with the allegations in Mayorga's complaint and Presiding Judge Doyle's dissent points to none.

18

mail rather than Vital Records matters not. And while Vital Records asserts that the e-mail address to which the death certificate was delivered shows that it was actually delivered to Mayorga's husband, we cannot determine from the e-mail address alone who actually used it, whether it was a shared address, or the defendants' knowledge of any such use.

For the above-stated reasons, the trial court erred by granting Vital Records' motion to dismiss Mayorga's intentional infliction of emotional distress claim.

2. *Negligence*. Mayorga contends the trial court erred by dismissing his negligence claim based upon the impact rule because the pecuniary loss exception applies. In Georgia, a person cannot recover in ordinary negligence for emotional distress damages without satisfying the

> impact rule, which has three elements: (1) a physical impact to the plaintiff; (2) the physical impact causes physical injury to the plaintiff; and (3) the physical injury to the plaintiff causes the plaintiff's mental suffering or emotional distress. A failure to meet any one of these requirements is fatal to a recovery [of damages for mental suffering].

(Citation and punctuation omitted.) *Eley v. Fedee*, 362 Ga. App. 618, 622 (1) (869 SE2d 566) (2022). As the Supreme Court of Georgia has explained:

19

[I]n order to avoid limitless liability out of all proportion to the degree of a defendant's negligence, and against which it is impossible to insure without imposing unacceptable costs on those among whom the risk is spread, the right to recover for negligently caused emotional distress must be limited.

(Citation and punctuation omitted.) *Coon v. Med. Center*, 300 Ga. 722, 734 (4) (797 SE2d 828) (2017).

The impact rule has no application in three circumstances. In cases where mere negligence[11] is not relied on, but the conduct complained of is malicious, wilful, or wanton, mental pain and suffering may be recovered without application of the impact rule, provided that it is directed toward the plaintiff. Another carefully circumscribed exception to the physical impact rule authoriz[es] recovery of damages by a parent where the parent and her child both suffered a physical impact that caused them both physical injuries, even if the parent's emotional distress arose not only from her physical injury but also from watching her child suffer and die. Finally, the pecuniary loss rule . . . provides for a third circumstance in which the impact rule does not apply.

(Citations and punctuation omitted.) *Eley*, 362 Ga. App. at 623 (1).

---

[11] This Court has held that the impact rule precludes recovery for "gross negligence" in addition to ordinary negligence. See *Crosby v. Comcast Corp.*, 284 Ga. App. 841, 842 (644 SE2d 917) (2007).

We find no merit in Mayorga's claim that the pecuniary loss rule saves his ordinary negligence claim. This rule allows for a recovery of damages for mental injury despite the lack of an impact. See *Eley*, 362 Ga. App. at 623 (1). The genesis of the pecuniary loss rule originates from the following language in an 1892 opinion by the Supreme Court of Georgia:

> The law protects the person and the purse. The person includes the reputation. The body, reputation and property of the citizen are not to be invaded without responsibility in damages to the sufferer. But outside these protected spheres, the law does not yet attempt to guard the peace of mind, the feelings or the happiness of every one, by giving recovery of damages for mental anguish produced by mere negligence. There is no right, capable of enforcement by process of law, to possess or maintain without disturbance any particular condition of feeling. The law leaves feeling to be helped and vindicated by the tremendous force of sympathy. The temperaments of individuals are various and variable, and the imagination exerts a powerful and incalculable influence in injuries of this kind. There are many moral obligations too delicate and subtle to be enforced in the rude way of giving money compensation for their violation. Perhaps the feelings find as full protection as it is possible to give, in moral law and a responsive public opinion. The civil law is a practical business system, dealing with what is tangible, and does not undertake to redress psychological injuries.

*Chapman v. Western Union Tel. Co.*, 88 Ga. 763, 772-773 (15 SE 901) (1892). Following the issuance of "[m]any cases contain[ing] various interpretations and applications of the law as announced in the *Chapman* case," this Court summarized our view of the impact rule and "what is meant by an injury to a person's purse" as follows:

> In cases where mere negligence is relied on, before damages for mental pain and suffering are allowable, there must also be an actual physical injury to the person, or a pecuniary loss resulting from an injury to the person which is not physical; such an injury to a person's reputation, or the mental pain and suffering must cause a physical injury to the person.

*Kuhr Bros. v. Spahos*, 89 Ga. App. 885 (81 SE2d 491) (1954), overruled on other grounds, *Whiten v. Orr Constr. Co.*, 109 Ga. App. 267, 270 (136 SE2d 136) (1964). In *Westview Cemetery v. Blanchard*, 234 Ga. 540, 543 (B) (216 SE2d 776) (1975), the Supreme Court stated the rule more succinctly as follows: "Where there is a physical injury or pecuniary loss, compensatory damages include recovery for accompanying 'mental pain and suffering' even though the tortious conduct complained of is merely negligent."

In *Ob-Gyn Assocs. of Albany v. Littleton*, 259 Ga. 663 (386 SE2d 146) (1989), the Supreme Court discussed the history of the pecuniary loss rule and its application to cases involving injury to property before holding:

> We reiterate the rule that for a pecuniary loss to support a claim for damages for emotional distress, the pecuniary loss must occur as a result of a tort involving an injury to the person even though this injury may not be physical. An injury to the reputation would be such an injury.

Id. at 667 (2) (B). The above-quoted language from *Littleton* is now used to determine the application of the pecuniary loss rule, even though it differs from that of *Kuhr Bros.* and *Westview Cemetery* by requiring that the pecuniary loss occur as a result of a tort. See *White v. State*, 305 Ga. 111, 122, n.10 (823 SE2d 794) (2019) ("When a high court finds discordant opinions among its own . . . precedents the court generally follows its decision in the most *recent* case, which must have tacitly overruled any truly inconsistent holding.") (citation and punctuation omitted; emphasis in original); *Oliver v. McDade*, 297 Ga. 66, n.1 (772 SE2d 701) (2015) ("*Oliver II*") (citing *Littleton* definition of pecuniary loss rule); *Lee v. State Farm Mut. Ins. Co.*, 272 Ga. 583, 585 (1), n.3 (533 SE2d 82) (2000) (same).

In *Owens v. Gateway Mgmt. Co.*, 227 Ga. App. 815 (490 SE2d 501) (1997), we addressed whether "medical bills and lost time from work" resulting from the

emotional distress suffered during a home invasion qualified as a pecuniary loss under the *Littleton* test. Id. at 816. We concluded that the plaintiff's negligence claim against the apartment management company failed

> because the only pecuniary loss plaintiff complains of on appeal is that incurred due to medical bills and lost time from work she allegedly incurred because of emotional distress following the incident in question. As such, we conclude that that pecuniary loss is not of the same type as that referred to in [*Littleton*] because it is itself a form of emotional distress damage as opposed to pecuniary loss occurring as the result of a tort involving an injury to the person even though this injury may not be physical such as an injury to reputation. To hold otherwise would be to allow bootstrapping of an extreme nature.

(Citation and punctuation omitted.) Id. Consistent with the reasoning of *Owens*, this Court has held that medical expenses, psychological treatment fees, and lost income incurred as a result of emotional distress do not qualify as a pecuniary loss. *Eley*, 262 Ga. App. at 627 (3); *Grizzle v. Norsworthy*, 292 Ga. App. 303, 306 (2) (664 SE2d 296) (2008). Based on this line of cases, it appears that Mayorga's medical bills do not qualify as a pecuniary loss that will allow him to recover in ordinary negligence for his emotional distress.

24

Mayorga points to a different line of cases, *Oliver v. McDade*, 328 Ga. App. 368 (762 SE2d 96) (2014) ("*Oliver I*") and *Nationwide Mut. Fire Ins. Co. v. Lam*, 248 Ga. App. 134 (546 SE2d 283) (2001),[12] to assert that his medical expenses are a pecuniary loss. We disagree. First, the portion of the majority opinion in *Oliver I* that addressed the pecuniary loss rule was vacated by the Supreme Court in *Oliver II*. See 297 Ga. at 68 (vacating Division 2 of *Oliver I* ). Second, our decision in *Lam* was wrongly decided.

In *Lam*, a husband and wife were involved in an automobile accident in which their vehicle was damaged. 248 Ga. App. at 135. Although the wife suffered no physical injury, she alleged that the accident aggravated a preexisting mental illness, the treatment of which resulted in medical expenses. Id. We concluded that the wife suffered a pecuniary loss based upon her medical bills and the damage to personal property in the accident. Id. at 138 (2). We then found that she had suffered "an injury

---

[12] The Supreme Court of Georgia denied certiorari in *Lam*, with three of the seven justices dissenting. *Nationwide Mut. Ins. Co. v. Lam*, 2001 Ga. LEXIS 615 (July 16, 2001). It is well established that "the denial of a writ of certiorari shall not be taken as an adjudication that the decision or judgment of the Court of Appeals is correct." (Citation and punctuation omitted.) *Ezor v. Thompson*, 241 Ga. App. 275, 277 (1) (526 SE2d 609) (1999).

to her person, consisting of aggravation of her preexisting mental illness, which before the collision had been stable for years." Id.

In his dissent to *Oliver I*, Presiding Judge Andrews advocated that this Court overrule *Lam*, explaining:

> In permitting a plaintiff to seek damages for negligently caused emotional distress in the absence of physical injury, *Lam* failed to address the prior holding of *Owens*. . . . *Lam* wrongly applied the pecuniary loss rule by finding that the medical bills and lost wages incurred by [the plaintiff] supplied the pecuniary loss for her claim. Just as in *Owens*, the only pecuniary loss in *Lam* is that incurred due to medical bills and lost time from work [the plaintiff] allegedly incurred because of emotional distress following the incident *and was not the result of a separate tort involving an injury to [the plaintiff]*.

(Citation and punctuation omitted; emphasis supplied.) *Oliver I*, 328 Ga. App. at 378 (2), (2) (c) (Andrews, P. J., dissenting). Based upon this reasoning, we agree with Presiding Judge Andrews that this portion of *Lam* should be overruled.[13] As the

---

[13] We also overrule Division 1 of this Court's opinion in *Hall County Mem. Park v. Baker*, 145 Ga. App. 296, 297 (1) (243 SE2d 689) (1978), because the plaintiff suffered no separate injury other than the grief caused by the improper burial location of her deceased husband. Thus, her medical bills and lost wages should not have been considered a pecuniary loss. While this Court overruled *Hall County Mem. Park* in *Oliver I*, 328 Ga. App. 368 (2), n.6, the Supreme Court of Georgia vacated that portion of our opinion in *Oliver II*. See 297 Ga. at 68. It is therefore necessary for us to do so again.

26

Supreme Court of Georgia explained in *Coon*: "If we do not insist on a workable limiting principle as a prerequisite to recognition of new exceptions to the physical impact rule, the exceptions will soon swallow the rule." 300 Ga. at 735 (4). We therefore affirm the trial court's dismissal of Mayorga's negligence claim.[14]

---

[14] In his dissent, Presiding Judge McFadden invites this Court to affirm the trial court's dismissal of Mayorga's negligence claim based upon the authority of *Dept. of Labor v. McConnell*, 305 Ga. 812, 815-816 (3) (a) (828 SE2d 352) (2019) (rejecting plaintiff's claim that there is a "general legal duty to all the world not to subject others to an unreasonable risk of harm" to support a claim of negligence) (citation and punctuation omitted). The analysis proposed by Presiding Judge McFadden was neither raised below nor ruled upon by the trial court, and the parties do not address it in their briefs before this Court. While this Court "*may* affirm the judgment of a lower court so long as it is right for any reason," (citation and punctuation omitted; emphasis supplied.) *Reed v. Reed*, 295 Ga. 574, 578 (2) (761 SE2d 326) (2014), the issue addressed by the parties below and on appeal (application of the impact rule), as well as by the trial court, also provides a basis for this Court to affirm the trial court's dismissal of Mayorga's negligence claim. Additionally, the conflicting lines of cases on the pecuniary loss exception to the impact rule are squarely before us in this case, and a resolution of this conflict would benefit the bench and bar going forward. Accordingly, we decline Presiding Judge McFadden's invitation to decide this case on another basis.

*Judgment affirmed in part and reversed in part. Rickman, C. J., Barnes, P. J., Mercier and Hodges, JJ., and Senior Appellate Judge Herbert E. Phipps, concur. Pinson, J., concurs specially. Reese, J., concurs fully with Brown, J., and concurs with Pinson, J. Miller, P. J., concurs with Brown and Pinson, JJ. Doyle, P. J., and Markle, J., concur fully in Division 2 of the majority and dissent in Division 1. Dillard, P. J., concurs fully in Division 2 of the majority and joins with Presiding Judge Doyle in Divisions 1 and 2 (a) of her dissent, not 2 (b), and writes specially. Gobeil and Pipkin, JJ., concur fully in Division 2 of the majority and join Presiding Judge Dillard in his dissent. McFadden, P. J., concurs specially in Division 2 of the majority, dissents in Division 1 of the majority, and joins Presiding Judge Doyle in Division 1 and 2 (b), not 2 (a), of her dissent.*

A22A0316. LUIS MAYORGA v. JIM BENTON d/b/a VITAL RECORD SOLUTIONS.

PINSON, Judge, concurring specially.

I concur with the result the majority reaches here, but on abbreviated reasoning.

First, I agree that Mayorga gets a chance to prove his claim for intentional infliction of emotional distress. The bar for establishing the element in dispute here—extreme and outrageous conduct—is ultimately pretty high. *Ingram v. JIK Realty Co.*, 199 Ga. App. 335, 337-38 (1) (404 SE2d 802) (1991) (burden to show requisite outrageousness is "a stringent one"); see also *Doe v. Roe*, 362 Ga. App. 23, 30 (3) (d) (864 SE2d 206) (2021) ("extreme and outrageous" element will be established only by conduct that "go[es] beyond all possible bounds of decency," is "regarded as atrocious," and is "utterly intolerable in a civilized society"). But the

29

threshold for surviving a motion to dismiss for failure to state a claim is not: in our notice-pleading system, a claim lives to see discovery if the plaintiff could "possibly introduce evidence within the framework of the complaint" that satisfies the elements of his claim. *Norman v. Xytex Corp.*, 310 Ga. 127, 130-31 (2) (848 SE2d 835) (2020). And here, Mayorga could "possibly" prove that the defendants knew that he was already depressed and grieving the death of his daughter by suicide; that this made him particularly susceptible to mental and emotional harm (how could it not?); and that, knowing this, the defendants intentionally sent her death certificate (a horrible thing for a father to have to review at all) with a notation that could be taken as callous and cruel and meant to humiliate or cause guilt, intending or at least knowing that Mayorga would see it. All of that is properly considered in assessing the conduct's outrageousness. See *Gordon v. Frost*, 193 Ga. App. 517, 521 (1) (388 SE2d 362) (1989) (evidence of a defendant's "malicious purpose" or "wanton disregard of a plaintiff's rights" may be considered in determining conduct's outrageousness); *Bridges v. Winn-Dixie Atlanta, Inc.*, 176 Ga. App. 227, 230 (1) (335 SE2d 445) (1985) (defendant's "knowledge that the [plaintiff] is particularly susceptible to emotional distress" is relevant to determining outrageousness). Tell it all to "an average member of the community" and I think there is a good chance "she would

30

exclaim, 'Outrageous!'" *Wilcher v. Confederate Packaging, Inc.*, 287 Ga. App. 451, 453 (2) (651 SE2d 790) (2007). Whether or not any of this will ultimately be proven, it is enough "possible" support for the "extreme and outrageous" element to survive a motion to dismiss. See *Nicholson v. Windham*, 257 Ga. App. 429, 433-34 (3) (571 SE2d 466) (2002); *Gordon*, 193 Ga. App. at 521 (1).

I also agree that Mayorga's negligence claim was properly dismissed. As the dissents in this case make clear, there is certainly room for debate about the way the impact rule and the pecuniary loss rule have been applied in cases involving mental illness. But this case is on all fours with at least two of our cases, including one decided just this year, which have rejected the medical-bills-for-mental-injury argument for showing a pecuniary loss. See *Eley v. Fedee*, 362 Ga. App. 618, 627 (3) (869 SE2d 566) (2022); *Owens v. Gateway Mgmt. Co.*, 227 Ga. App. 815, 816 (490 SE2d 501) (1997). And those cases rest on the understanding that "[t]his Court is constrained to follow our Supreme Court's rulings which require [that conclusion]." *Owens*, 227 Ga. App. at 816 (Blackburn, J., concurring specially). That blocks the path forward for Mayorga's pecuniary-loss argument, which means he can't state a claim for negligence here.

31

For these reasons, I concur in the judgment, and I am authorized to state that Presiding Judge Miller and Judge Reese concur in this opinion.

A22A0316. MAYORGA v. BENTON.

DOYLE, Presiding Judge, concurring in part and dissenting in part.

I respectfully dissent to Division 1 because the conclusory factual allegations contained in appellant Mayorga's complaint are belied by the more specific allegations and two exhibits attached thereto and do not, as a matter of law, satisfy the elements of a claim for intentional infliction of emotional distress. With respect to Division 2, I fully concur, but I write specially to reiterate my belief that in cases in which the plaintiff was directly involved in a physical accident such as a car crash, recovery for the plaintiff's emotional distress should not be barred by the impact rule.

1. *Intentional infliction of emotional distress.*

A motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the

33

complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.[15]

When ruling on a motion to dismiss,

a court may consider exhibits attached to and incorporated into the complaint and answer. To the extent there are inconsistencies between the allegations in the complaint and exhibits attached to the complaint, the exhibits control. The appellate court reviews de novo the trial court's ruling on the defendant['s] motion to dismiss, accepting as true all well-pled material allegations in the complaint and resolving any doubts in favor of the plaintiff.[16]

---

[15] (Citations and punctuation omitted.) *Love v. Fulton County Bd. of Tax Assessors*, 311 Ga. 682, 683 (859 SE2d 33) (2021), quoting *Anderson v. Flake*, 267 Ga. 498, 501 (2) (480 SE2d 10) (1997).

[16] (Citations and punctuation omitted; emphasis supplied.) *Love*, 311 Ga. at 683-684, citing OCGA § 9-11-10 (c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *Minnifield v. Wells Fargo Bank*, 331 Ga. App. 512, 514-515 (2) (771 SE2d 188) (2015) ("When considering a motion to dismiss for failure to state a claim, a trial court may consider exhibits attached to and incorporated into the complaint and answer.") (citation omitted); *Lord v. Lowe*, 318 Ga. App. 222, 223-224 (741 SE2d 155) (2012) ("If there is any discrepancy between the allegations in the complaint and the attached exhibits, the latter control."). And, finally, as stated in *Love*, 311 Ga. at 694, n.13, considering documents attached to a complaint does not require the trial court to weigh the evidence when the issue is a legal question for the court. We note that this Court's

A complaint containing general factual allegations that a defendant's conduct was extreme and outrageous and caused the plaintiff severe emotional distress could be sufficient to withstand a motion to dismiss if it properly pleads the essential elements of the claim.[17] Here, however, Mayorga does not just rely on his general allegations; instead, he alleged specific details and attached to his complaint exhibits that form the sole basis of his claims against appellee Vital Record Solutions ("VRS"). We can consider those exhibits, and to the extent that they conflict with the allegations in the complaint, the exhibits control.[18]

The elements of an intentional infliction of emotional distress claim are: "'(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; and (4) The emotional distress must be severe.'"[19] Here,

---

opinion in *Williams v. DeKalb County*, __ Ga. App. __ (Case No. A22A0508) addresses affidavits attached to an answer and would not control here.

[17] See, e.g., *Walker v. Walker*, 293 Ga. App. 872, 874-875 (2) (b) (668 SE2d 330) (2008).

[18] See *Love*, 311 Ga. at 683-684; *Behdadnia v. E. E. Beavers Family Partnership*, 345 Ga. App. 711 (815 SE2d 103) (2018); *Lord*, 318 Ga. App. at 224.

[19] *Northside Hosp. v. Ruotanen*, 246 Ga. App. 433, 435 (541 SE2d 66) (2000).

although the argument was not raised below,[20] the trial court dismissed Mayorga's claim for intentional infliction of emotional distress on the ground that "while the language is certainly unprofessional, insensitive, hurtful, and harmful to the dignity of the plaintiff — a grieving parent — it does not rise to the level of extreme and outrageous as contemplated by Georgia [c]ourts."[21] I agree that as a matter of law, the conduct alleged in the complaint did not rise to the required level.

> *Whether a claim rises to the level of extreme and outrageous conduct necessary to support a cause of action for the intentional infliction of emotional distress is a question of law*. In assessing such conduct, it has *not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice*, or a degree of aggravation that would entitle

---

[20] Instead, VRS argued that the alleged conduct was not directed at Mayorga as required for him to recover. See *Reece v. Chestatee State Bank*, 260 Ga. App. 136, 142 (2) (579 SE2d 11) (2003) ("It is well settled that the tortious conduct must have been directed at the plaintiff in order to be actionable under a theory of intentional infliction of emotional distress."), citing *Lively v. McDaniel*, 240 Ga. App. 132, 134 (2) (522 SE2d 711) (1999) ("even malicious, wilful[,] or wanton conduct will not warrant a recovery for the infliction of emotional distress if the conduct was not directed toward the plaintiff") (citation and punctuation omitted).

[21] As the majority correctly notes, the trial court has the "authority to dismiss claims sua sponte if it can determine from the pleadings that the claims cannot succeed as a matter of law." See *Roberts v. DuPont Pine Products*, 352 Ga. App. 659, 661 (2) (835 SE2d 661) (2019).

36

the plaintiff to punitive damages for another tort. *Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.*[22]

More specifically, extreme and outrageous conduct does not include: "mere insults, indignities, threats, annoyances, petty oppressions, or other vicissitudes of daily living, but must go beyond all reasonable bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community."[23]

---

[22] (Citation and punctuation omitted; emphasis supplied.) *Cottrell v. Smith*, 299 Ga. 517, 521-522 (I) (B) (788 SE2d 772) (2016).

[23] (Citation and punctuation omitted.) *Bazemore v. U. S. Bank Nat. Assn.*, ___ Ga. App. ___ , ___ (f) (872 SE2d 491) (2022). See, e.g., *Justice v. SCI Ga. Funeral Svcs.*, 329 Ga. App. 635, 639 (4) (765 SE2d 778) (2014) (a funeral home's actions in giving the plaintiff an empty urn that purported to hold her daughter's ashes "while even if insensitive or negligent, do[] not rise to the level of outrageousness necessary to sustain a claim for intentional infliction of emotional distress") (punctuation omitted); *Ghodrati v. Stearnes*, 314 Ga. App. 321, 323-324 (723 SE2d 721) (2012) (finding that defendants' actions in calling plaintiff "racist and derogatory names [and] post[ing] inappropriate signs about [her at work]" was not extreme and outrageous); *Abdul-Malik v. AirTran Airways, Inc.*, 297 Ga. App. 852, 856-857 (1) (678 SE2d 555) (2009) (holding that conduct was not extreme and outrageous where the defendants asked the plaintiff "if he was Muslim [and] called him a terrorist and a liar"); *Hill v. City of Fort Valley*, 251 Ga. App. 615, 616 (1) (a) (554 SE2d 783) (2001) (holding that even if a funeral home was "insensitive or negligent in failing to obtain the express permission of the plaintiffs prior to moving their mother's grave [after mistakenly burying her in the wrong plot], there is nothing in the record to raise

The email in question sent by Southern Cremations[24] to Mayorga's husband[25]

---

such conduct to the degree of wilfulness or wantonness that is necessary for a claim of intentional infliction of emotional distress"); *Ruotanen*, 246 Ga. App. at 436 (comments and conduct of hospital morgue staff, including referring to the plaintiff's deceased father as "'the body," hanging up on her during a phone call, and refusing to release his remains to her, "although possibly rude and insensitive in light of [the plaintiff's] recent loss, do not rise to the level of outrageousness necessary to sustain a claim for intentional infliction of emotional distress").

[24] Mayorga also named Southern Cremations as a defendant, but Mayorga only appeals the order granting the motion to dismiss as to VRS.

[25] The majority argues that we are assuming the email was sent to Mayorga's husband and speculates that some set of facts learned in discovery could show it was sent to Mayorga, but Mayorga's pleadings and the email are clear that VRS sent the draft death certificate to Southern Cremations, not Mayorga or his husband, and Southern Cremations then prepared and sent the draft death certificate to an email address that appears to be the husband's personal email on January 21, 2021, seeking further corrections or approval, and that Mayorga "learned of" the email a couple of days later on January 23, 2021. Nowhere in the complaint does Mayorga allege that he had any contact with VRS, who was hired by Southern Cremations, or regularly used his husband's email. See *Doe v. Roe*, 362 Ga. App. 23, 29 (3) (d) (864 SE2d 206) (2021) (finding that false statements made by the defendant to third parties are not considered to be directed at the plaintiff); *Reece v. Chestatee State Bank*, 260 Ga. App. 136, 142 (2) (579 SE2d 11) (2003) (finding that the alleged statements were not directed at the plaintiff when they were only made to a third party). See e.g., *Willis v. United Family Life Ins.*, 226 Ga. App. 661, 666 (3) (487 SE2d 376) (1997) (finding that letters sent by defendant to third parties which were eventually read by plaintiff were not "directed" at the plaintiff); *Carter v. Willowrun Condo. Association*, 179 Ga. App. 257, 260 (5) (345 SE2d 924) (1986) (finding that letter sent by defendant to plaintiff's lessor was not directed at the plaintiff). While I agree that these more specific allegations and the language used in the email and death certificate belie his general allegations and defeat his claim, it is unnecessary to decide this issue for the other reasons set forth herein.

does not explicitly mock Mayorga's sexual orientation or his daughter's suicide. In its entirety, the email reads:

> Here is the attachment to the revised draft with handwritten corrections. Please look over the personal information and if there are any corrections you can email them the [sic] [a specific Southern Cremations email address]. If everything is correct you can go ahead and print it out, sign it and email it back with Approval + Name in the subject line or you can respond to this email saying you approve of the draft. Thank you.

Similarly, the draft death certificate attached to the complaint contained no information regarding Mayorga's sexual orientation or Kaitlyn's suicide. Rather, in addition to basic demographic information about Kaitlyn, it included marks in five areas with a large "X," indicating information that was outstanding or that VRS was questioning: (1) the mother's maiden name, listed as only "Megan Marie" (possibly missing a last name); (2) the father's full name, listed as Luis Antonio Mayorga Rodriguez; (3) the informant's name, listed as Matthew Rogers Mayorga ("Matthew");[26] (4) the decedent's education, which is blank; and (5) the disposition date, also blank. At the bottom of the form next to an X (similar to an asterisk

---

[26] The "informant" listed on the death certificate is the person providing the requested information. Matthew is also listed on the form as the step-father.

drawing attention from the body of the document to it for further explanation or questioning) is the text:

> MOTHER'S MAIDEN NAME
> EDUCATION- LAST GRADE COMPLETED
> I AM SO CONFUSED LOL - THE STEP DAD AND THE FATHER
> HAVE THE SAME LAST NAME?

Mayorga characterizes these statements as "making fun of Kaitlyn's death and Mayorga's sexual orientation, thereby denigrating Kaitlyn's home life and raising the question in Mayorga's mind of his own potential culpability in [Kaitlyn's] suicide," and he concludes that VRS's actions in preparing the draft of the death certificate and "acting in concert" with Southern Cremations to deliver it "were callous, extreme, outrageous, and not to be tolerated in a civilized society." We are not, however, required to accept Mayorga's *legal conclusions* asserted in his complaint.[27] Nor do we view the conduct from his subjective perspective; rather, it is an objective

---

[27] See *Trop, Inc. v. City of Brookhaven*, 296 Ga. 85, 87 (1) (764 SE2d 398) (2014) ("While a trial court is required to consider a non-moving party's factual allegations to be true, it is not required to accept the legal conclusions the non-[moving] party suggests that those facts dictate."); *Novare Group, Inc. v. Sarif*, 290 Ga. 186, 191 (4) (718 SE2d 304) (2011) (same).

standard, i.e., would the "average member of the community" observe the conduct and "exclaim, 'Outrageous!'"[28]

While an average member of the community would find the use of slang text "LOL" in a draft death certificate was in poor taste and insensitive, they would not find it outrageous. The single statement simply does not rise to the level of extreme, outrageous, atrocious, or "utterly intolerable" conduct that would sustain a claim for intentional infliction of emotional distress.[29] Mayorga's conclusory allegation that VRS's actions were outrageous is insufficient to withstand the motion to dismiss in the face of the actual email and draft death certificate that Mayorga relies upon, which evidence demonstrates as a matter of law that he cannot prove the elements of his claim.[30] Finally, nothing else about VRS's intent that could hypothetically be revealed

---

[28] (Punctuation omitted.) *Wilcher*, 287 Ga. App. at 453 (2).

[29] *Renton v. Watson*, 319 Ga. App. 896, 903 (3) (739 SE2d 19) (2013) (affirming the dismissal of a claim for intentional infliction of emotional distress because the complaint and the documents attached thereto demonstrate that the defendant's conduct "was not so atrocious or utterly intolerable as to rise to the level of intentional infliction of emotional distress").

[30] There is no dispute that Mayorga's emotional distress was profound, as he was grieving his daughter's death. And Mayorga is correct that extreme and outrageous conduct may arise from a party's knowledge that the other party is peculiarly susceptible to emotional distress. See *Ashman v. Marshall's of MA, Inc.*, 244 Ga. App. 228, 229-330 (1) (535 SE2d 265) (2000). Nevertheless, the defendant's

41

through discovery would be relevant to the conduct about which Mayorga actually complains – the words as written on the death certificate.[31] Indeed, this conduct must be viewed in isolation because Mayorga does not complain of any other acts or a

---

actual conduct must still meet the objective, extreme outrageousness standard to support a claim for intentional infliction of emotional distress. See *Jarrard v. United States Parcel Service, Inc.*, 242 Ga. App. 58, 61-62 (529 SE2d 144) (2000) (finding no element of outrageousness where employer, who knew of employee's emotional problems, conducted single brutal job evaluation of employee); *Harris v. Leader*, 231 Ga. App. 709, 712 (1) (b) (499 SE2d 374 (1998) (finding psychiatrist who expressed personal sexual fantasies to client was not liable despite his knowledge of client's susceptibility to emotional distress, including previous suicide attempts); *Bowers v. Estep*, 204 Ga. App. 615, 616, 618 (2) (420 SE2d 336) (1992) (finding, even though employer knew of employee's depression and intentionally harassed and belittled him until he broke down and was admitted to psychiatric clinic, no liability for intentional infliction of mental distress); *Bridges v. Winn-Dixie Atlanta, Inc.*, 176 Ga. App. 227, 230 (1) (335 SE2d 445) (1985) (finding that even though employer knew of employee's low emotional threshold brought on by her multiple sclerosis, there was no liability for insensitive demands for polygraph and for termination based on her refusal to cooperate).

[31] The bottom line is that even if discovery revealed overt bigotry and homophobia on the part of VRS and Southern Cremations, the statements contained in the attachments to the exhibits did not meet the extreme outrageousness standard.

42

pattern of conduct.[32] Accordingly, I would affirm the trial court's order granting the motion to dismiss the claim for intentional infliction of emotional distress.

2. (a) *Negligence.* I concur fully in Division 2 of the majority opinion dismissing Count 1 of the complaint alleging a negligence claim.

(b) *Overruling Lam and Baker.* I agree that this Court should overrule *Lam* and *Baker* to the extent that they conflict with the prevailing law. But I write separately to express my view that in cases such as *Lam*, in which the plaintiff was *in a car that was hit* by an oncoming vehicle,[33] the plaintiff's emotional injuries (due to the other driver's negligence) should be legally cognizable damages despite the absence of a physical injury.

In cases such as those, where the plaintiff is physically impacted but uninjured through mere luck, the impact rule (which requires that the physical impact result in

---

[32] Cf. *Mears v. Gulfstream Aerospace Corp.*, 225 Ga. App. 636, 640 (2) (a) (484 SE2d 659) (1997) ("We previously have indicated that a series of acts allegedly causing emotional distress should be viewed cumulatively, rather than in isolation."); *Anderson v. Chatham*, 190 Ga. App. 559, 567 (8) (379 SE2d 793) (1989) ("While the objected-to language might not, taken in isolation, rise to a level of conduct actionable under the law for emotional distress, viewing the encounter . . . in the totality of the circumstances does not show a failure of the cause of action as a matter of law. The last encounter came after a described pattern of abusive behavior after the two had . . . a lengthy working relationship.").

[33] See *Lam*, 248 Ga. App. at 135.

a physical injury[34]) should not bar recovery for the resulting emotional injuries proved by the plaintiff. As I noted in a recent case addressing the claims of children in a car involved in a serious accident who were barred from recovering for their emotional injuries:

> [T]he damages at issue are typical of those sought by plaintiffs involved in car wrecks. There is a "clear relationship between the plaintiff[s] being . . . victim[s] of the breach of duty and the compensability to the plaintiff[s]." And this is not a case in which "there is no connection between the nature of the damages and the reason for allowing the additional recovery[,]" nor is it a case of "limitless liability out of all proportion to the degree of a defendant's negligence[.]" The alleged mental injuries directly flow as a natural consequence of the alleged tortious conduct, and they would be legally cognizable — though no different in character — had there been a physical injury to the [plaintiff]. In sum, nothing in this case suggests an expanded class of victims, a risk of fraud, or causal remoteness [addressed by the impact rule].[35]

This Court is not authorized to depart from the law established by our Supreme Court and legislature, but I would urge for the creation of a legal remedy in this

---

[34] See *Lee*, 272 Ga. at 586 (I).

[35] (Citations omitted.) *Eley*, 362 Ga. App. at 629 (1) (a) (Doyle, P. J., concurring fully and specially).

limited type of case in which a very real physical impact of an accident results in a mental injury without simultaneous physical injury.

I am authorized to say that Presiding Judge Dillard joins in Divisions 1 and 2 (a), Judge Markle joins in Division 1, and Presiding Judge McFadden joins in Divisions 1 and 2 (b) of this opinion.

A22A0316. MAYORGA v. BENTON.

DILLARD, Presiding Judge, concurring in part and dissenting in part.

I join Divisions 1 and 2 (a) of Presiding Judge Doyle's opinion, concurring in part and dissenting in part to the majority's opinion. I write separately to briefly explain an additional reason for doing so.

This is a truly tragic case. I cannot begin to comprehend the extraordinary grief and suffering the Mayorga family has experienced in the wake of Kaitlyn's passing. Needless to say, the reckless actions of Southern Cremations and Vital Records were unprofessional and tacky at best, and bigoted, mean-spirited, and callous at worst. And while there are different ways to interpret what was meant by the comment left on the draft death certificate by an employee of Vital Records, there is no question it was morally indefensible. Even so, the narrow and controlling issue before us is

46

whether the statement is sufficiently extreme and outrageous as a matter of Georgia law. I am constrained to conclude that it is not.

The central problem with Mayorga's intentional infliction of emotional distress claim is the indeterminacy and ambiguity of the statement on which his claim hinges—"I AM SO CONFUSED LOL - THE STEP DAD AND THE FATHER HAVE THE SAME LAST NAME?" It is entirely possible that this statement, taken at face value, reflects genuine confusion (albeit awkwardly expressed) by the employee as to why the biological father and step-father share the same last name. It is also possible this employee was not confused at all, was being sarcastic, and simply found it humorous that the biological father and step-father shared the same last name—perhaps because the employee mistakenly surmised the biological mother married the step-father after divorcing the biological father. It may also be the statement was meant to implicitly mock Mayorga's sexual orientation or same-sex marriage by highlighting that he and his husband share the same last name. We simply cannot know for certain *what* those words were intended to convey to the reader, and neither could Mayorga when he was appallingly confronted with that statement on his daughter's draft death certificate.

To be sure, it is difficult (if not impossible) to interpret the relevant statement as being anything other than wildly unprofessional in the context of a draft death certificate. But *even if* discovery could somehow show that the defendants intended for that statement to mock Mayorga's sexual orientation or same-sex marriage, the words *as written* and judged under an *objective* standard—as required by Georgia law[36]—simply do not rise to the requisite level of extreme and outrageous conduct required to sustain a claim for intentional infliction of emotional distress.[37] Indeed,

[36] *See Yarbray v. S. Bell Tel. & Tel. Co.*, 261 Ga. 703, 706 (2) (409 SE2d 835) (1991) (noting that "[w]hether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law," and that "[i]f the evidence shows that *reasonable persons* might find the presence of extreme and outrageous conduct and resultingly severe emotional distress, the jury then must find the facts and make its own determination" (emphasis supplied)).

[37] *See Wilcher v. Confederate Packaging, Inc.*, 287 Ga. App. 451, 453 (2) (651 SE2d 790) (2007) ("The rule of thumb in determining whether the conduct complained of was sufficiently extreme and outrageous is whether the recitation of the facts to an average member of the community would arouse her resentment against the defendant so that she would exclaim, 'Outrageous!'" (punctuation omitted)); *accord Bazemore v. U.S. Bank Nat'l Ass'n*, ___ Ga. App. ___ (f) (872 SE2d 491, 500 (f)) (2022); *Turnage v. Kasper*, 307 Ga. App. 172, 182 (1) (c) (704 SE2d 842) (2010); *see also Hustler Mag., Inc. v. Falwell*, 485 U. S. 46, 53 (108 SCt 876, 99 LE2d 41) (1988) ("Generally speaking the law does not regard the intent to inflict emotional distress as one which should receive much solicitude, and it is quite understandable that most if not all jurisdictions have chosen to make it civilly culpable where the conduct in question is sufficiently 'outrageous.'"); *Doe v. Roe*, 362 Ga. App. 23, 30 (3) (d) (864 SE2d 206) (2021) (noting that "it has not been

the vague, ambiguous, and indeterminate nature of the statement in the draft death certificate permits multiple interpretations by an objective person, and this, in turn, precludes Mayorga's IIED claim from going forward.[38]

---

enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort" and "[l]iability has been found only where the conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" (punctuation and citation omitted)); *Howerton v. Harbin Clinic, LLC*, 333 Ga. App. 191, 204-05 (2) (776 SE2d 288) (2015) (Branch, J.) (noting that "the burden which the plaintiff must meet in order to prevail [on a claim for IIED] is a stringent one," and that Georgia law provides for "a high degree of tolerance for a wide variety of questionable conduct" in this context); *Northside Hosp., Inc. v. Ruotanen*, 246 Ga. App. 433, 435 (541 SE2d 66) (2000) (noting that the relevant "comments and conduct, although possibly rude and insensitive in light of [the plaintiff's] recent loss, do not rise to the level of outrageousness necessary to sustain a claim for intentional infliction of emotional distress"); *United Parcel Serv. v. Moore*, 238 Ga. App. 376, 377 (519 SE2d 15) (1999) (noting that "[s]harp or sloppy business practices, even if in breach of contract, are not generally considered as going beyond all reasonable bounds of decency as to be utterly intolerable in a civilized community").

[38] *See supra* note 2; *Steel v. City of San Diego*, 726 FSupp2d 1172, 1191 (S.D. Cal. 2010) ("[T]he sole basis for Plaintiff's claim is [a] threat, which at best could be described as cryptic or vague. While Plaintiff urges the Court to infer a threat of physical harm or other particular sorts of harm from [the relevant] language, the Court finds that the meaning behind [the] message is not capable of ready determination. Because of its ambiguous nature, the Court cannot find that [the] threat was 'extreme or outrageous.'" (citation omitted)); *Cochran v. Cochran*, 65 Cal. App. 4th 488, 498, 499 (1) (2) (1998) ("To the extent the message which respondent allegedly left on his son's answering machine can be characterized as a threat, its meaning is hidden and

Thus, for this reason in addition to those outlined in Presiding Judge Doyle's opinion, I would affirm the trial court's dismissal of Mayorga's IIED claim.

I am authorized to state that Judge Gobeil and Judge Pipkin fully concur in this opinion.

---

lacking in immediacy. . . . While a recitation of the alleged facts to an average member of the community might prompt him to shake his head in disapproval, it would not lead him to exclaim, 'Outrageous!'"); *see also Santarsiero v. Martin*, No. 220CV00435FTM29NPM, 2021 WL 2856622, at *7 (II) (B) (2) (M.D. Fla. July 8, 2021) ("[W]ritten and verbal threats, insults and even vague allegations of harassment are not typically characterized as outrageous conduct."); *Maher v. Staub*, No. CV 09-8646 CAS JCX, 2010 WL 325747, at *7 (III) (B) (C.D. Cal. Jan. 4, 2010) ("The Court finds that defendant's alleged statements . . . , which by themselves are vague and do not reasonably convey a threat of physical harm, are not sufficient to infer that defendant's conduct was extreme and outrageous."); *Saadi v. Maroun*, No. 8:07-CV-1976-T-24MAP, 2008 WL 4194824, at *5 (4) (M.D. Fla. Sept. 9, 2008) ("Because of the high standard required to state a claim for intentional infliction of emotional distress, the vague reference to verbal threats is insufficient to allow Plaintiff's intentional infliction of emotional distress claim to go forward."). *Cf. Whalen v. Isaacs*, 233 Ga. App. 367, 368 (2) (504 SE2d 214) (1998) (noting that "plaintiff's claim rests upon the supposition that the initial message left by defendant was a hoax rather than an act of a good Samaritan intended to aid [plaintiff's] dog" after it was allegedly poisoned, provides "no probative evidence in support of his supposition," and the "circumstantial evidence upon which plaintiff relies is entirely consistent with defendant's explanation that he was merely relating the statements of the unidentified [third party]" who claimed to have poisoned the dog).

50

A22A0316. MAYORGA v. BENTON.

MCFADDEN, Presiding Judge, concurring specially in part and dissenting in part.

I respectfully dissent from Division 1 of the majority opinion and join Division 1 of Presiding Judge Doyle's dissent. As she explains, the claim for intentional infliction of emotional distress fails under settled law.

I concur specially in Division 2 of the majority opinion. I agree with the view Presiding Judge Doyle expresses in Division 2 (b). The emotional-injuries claims of a plaintiff who was in a vehicle that was hit head-on by an oncoming vehicle should be legally cognizable, despite the absence of a physical injury.

But unlike the majority and Presiding Judge Doyle, I would not reach the pecuniary loss rule. If we do reach the pecuniary loss rule, I would reaffirm our cases

51

that hold that medical bills for treatment of emotional distress can satisfy that rule; and I would disapprove our cases that hold the opposite.

I would not reach the pecuniary loss rule because, regardless of damages, Mayorga does not have a viable negligence action. The requisites of a negligence action are well established.

> In order to have a viable negligence action, a plaintiff must satisfy the elements of the tort, namely, the existence of a duty on the part of the defendant, a breach of that duty, causation of the alleged injury, and damages resulting from the alleged breach of the duty. The threshold issue in any cause of action for negligence is whether, and to what extent, the defendant owes the plaintiff a duty of care. Whether a duty exists upon which liability can be based is a question of law. The duty can arise either from a valid legislative enactment, that is, by statute, or be imposed by a common law principle recognized in the case law.

*Diamond v. Dept. of Transp.*, 326 Ga. App. 189, 193-194 (2) (756 SE2d 277) (2014) (citations and punctuation omitted). If a plaintiff does not adequately allege that the defendant owed him a duty, the complaint is subject to dismissal for failure to state a claim upon which relief could be granted. *Dept. of Labor v. McConnell*, 305 Ga. 812, 815-816 (3) (a) (828 SE2d 352) (2019) (affirming dismissal of complaint for failure to state a claim upon which relief could be granted because plaintiff "ha[d] not

shown that the [defendant] owed him . . . a duty"); see generally *Maynard v. Snapchat*, 313 Ga. 533, 535 (2) (870 SE2d 739) (2022). I am aware of no law that enacts or imposes the duty Mayorga seeks to enforce here.

But if we do reach the pecuniary loss rule, we should reaffirm *Nationwide Mut. Fire Ins. Co. v. Lam*, 248 Ga. App. 134 (546 SE2d 283) (2001), disapproved in part in *Oliver v. McDade*, 328 Ga. App. 368, 370 (2) n. 5 (762 SE2d 96) (2014), which was affirmed in part but vacated in pertinent part, 297 Ga. 66 (772 SE2d 701) (2015), and *Hall County Mem. Park v. Baker*, 145 Ga. App. 296, 297 (1) (243 SE2d 689) (1978), overruled in part in *Oliver v. McDade*, 328 Ga. App. at 370 (2) n. 6, which was affirmed in part but vacated in pertinent part, 297 Ga. 66 (772 SE2d 701) (2015). Those cases correctly hold that medical bills for treatment of emotional distress can satisfy the pecuniary loss rule. We should overrule instead the contrary holdings in *Owens v. Gateway Mgmt. Co.*, 227 Ga. App. 815 (490 SE2d 501) (1997), and *Eley v. Fedee*, 362 Ga. App. 618, 627 (3) (869 SE2d 566) (2022), which relied on *Owens*.

Whether medical bills can satisfy the pecuniary loss rule is a question within our purview. Our Supreme Court first held that damages for emotional injuries are not generally recoverable in the 19th century, *Chapman v. Western Union Tel. Co.,* 88 Ga. 763, 772-773 (15 SE 901) (1892), and has continued to reaffirm that holding. E.g.

53

*Coon v. Med. Center*, 300 Ga. 722, 734 (4) (797 SE2d 828) (2017). And, as one of the few exceptions to that rule, our Supreme Court has recognized the pecuniary loss rule: "for a pecuniary loss to support a claim for damages for emotional distress, the pecuniary loss must occur as a result of a tort involving an injury to the person even though this injury may not be physical." *Lee v. State Farm Mut. Ins. Co.*, 272 Ga. 583, 586 (I) n. 3 (533 SE2d 82) (2000), citing *Ob-Gyn Assoc. of Albany v. Littleton*, 259 Ga. 663 (386 SE2d 146) (1989).

Whether medical expenses incurred for treatment of emotional distress can satisfy the pecuniary loss rule is a question that only this court has squarely addressed — in two conflicting lines of cases.

*Baker* and *Lam* hold that medical expenses can suffice:

> The evidence in this case shows that the appellee suffered, in addition to other damages, pecuniary loss (medical bills and lost wages). Upon this showing of pecuniary loss, the appellee was then entitled to compensatory damages including a recovery for accompanying mental pain and suffering even though the tortious conduct complained of is merely ordinary negligence.

*Baker*, 145 Ga. App. at 297 (1). Likewise,

> [W]e find that Lam suffered a pecuniary loss. She was hospitalized and incurred substantial medical bills. Personal property was damaged in the

collision. And although she suffered no physical injury, she did suffer an injury to her person, consisting of aggravation of her preexisting mental illness, which before the collision had been stable for years.

*Lam*, 248 Ga. App. at 138.

> *Owens* and *Eley* reach the opposite conclusion.

> [T]he pecuniary loss rule is not applicable under the facts of this case because the only pecuniary loss plaintiff complains of on appeal is that incurred due to medical bills and lost time from work she allegedly incurred because of emotional distress following the incident in question. As such, we conclude that that pecuniary loss is not of the same type as that referred to in *Ob-Gyn Assoc. of Albany[ v. Littleton*, 259 Ga. at 663,] because it is itself a form of emotional distress damage as opposed to pecuniary loss occurring "as [the] result of a tort involving an injury to the person even though this injury may not be physical [such as an injury to reputation]." 259 Ga. at 667 (2) (B). To hold otherwise would be to allow bootstrapping of an extreme nature.

*Owens*, 227 Ga. App. at 816. Accord *Eley*, 362 Ga. App. at 627 (3) (adopting the "bootstrapping of an extreme nature" argument).

The bootstrapping argument cannot withstand examination in light of the purpose of the rule generally prohibiting recovery for emotional distress damages. Implicit in the bootstrapping argument is an assumption that the rule is an end in

itself. It assumes that the purpose of the rule is simply to bar recovery for this sort of injury. But our Supreme Court has acknowledged that the rule "sometimes produces harsh results." *Coon*, 300 Ga. at 734 (4) (citation and punctuation omitted). The reason for the rule is that it "provides a brighter line of liability and a clear relationship between the plaintiff's being a victim of the breach of duty and compensability to the plaintiff." Id. (citation and punctuation omitted).

> In short the rule is not an end in itself. It serves a screening function.
>
> There are three policy reasons traditionally given for having the impact rule and denying recovery for emotional distress unrelated to physical injuries. First, there is the fear, that absent impact, there will be a flood of litigation of claims for emotional distress. Second, is the concern for fraudulent claims. Third, there is the perception that, absent impact, there would be difficulty in proving the causal connection between the defendant's negligent conduct and claimed damages of emotional distress.

*Lee*, 272 Ga. at 587 (II).

> Much earlier, our Supreme Court explained the underlying policy this way:
>
> The temperaments of individuals are various and variable, and the imagination exerts a powerful and incalculable influence in injuries of this kind. There are many moral obligations too delicate and subtle to be enforced in the rude way of giving money compensation for their

56

violation. Perhaps the feelings find as full protection as it is possible to give, in moral law and a responsive public opinion. The civil law is a practical business system, dealing with what is tangible, and does not undertake to redress psychological injuries.

*Chapman,* 88 Ga. at 773.

The concerns Justice Hunstein expressed in *Lee* remain evergreen. But medical science has advance considerably since Justice Lumpkin dismissed psychological injuries as "delicate and subtle" and "[in]tangible." And so has the public policy of this state.

In the years since *Chapman* was decided, "our understanding of the brain — how it works, what goes wrong when it is injured or diseased — has increased dramatically." Presidential Proclamation 6158 (July 17, 1990) (declaring the 1990s "as the Decade of the Brain"). Posttraumatic Stress Disorder (PTSD), for example, first appeared in the third edition of The Diagnostic and Statistical Manual of Mental Disorders (DSM III) in 1980. PTSD has been found to correlate to changes in the brain that are detectable by magnetic resonance imaging (MRI). See e.g. Lanius RA, Williamson PC, Densmore M, Boksman K, Gupta MA, Neufeld RW, Gati JS, Menon RS. Neural correlates of traumatic memories in posttraumatic stress disorder: a

functional MRI investigation. Am J Psychiatry. 2001 Nov;158(11):1920-2. doi: 10.1176/appi.ajp.158.11.1920. PMID: 11691703.

So the tools with which we evaluate other sorts of medical expenses as evidence of pecuniary damages — for example expenses arising from soft tissue injuries — are sufficient to evaluate such expenses as evidence of psychological distress. See OCGA § 24-7-702 (codifying *Daubert v. Merrell Dow Pharmaceuticals*, 509 U. S. 579 (113 SCt 2786, 125 LE2d 469) (1993)).

The public policy of this state now reflects those medical advances. In its most recent session the General Assembly passed, and the governor signed, House Bill 1013, the Georgia Mental Health Parity Act. The Act directs that insurance coverage for mental health care be comparable to coverage for medical and surgical care. See OCGA § 33-1-27 (b), cross referencing 42 USC § 300gg-26.

We should therefore hold that the pecuniary loss rule encompasses mental health care expenses. So holding would comport with the real purpose of the general rule denying recovery for emotional distress and with the public policy of this state.